## SANDRA BARNES *v.* STATE OF MARYLAND

[No. 724, September Term, 1975.]

*Decided March 31, 1976.*

26

The cause was argued beforé ORTH, C. J., and GILBERT and MELVIN, JJ.

*Robert S. Sherman* for appellant.

*Michael James Kelly, Assistant Attorney General,* with whom were *Francis B. Burch, Attorney General, William A. Swisher, State's Attorney for Baltimore City,* and *James Schneider, Assistant State's Attorney for Baltimore City,* on the brief, for appellee.

ORTH, C. J., delivered the opinion of the Court.

On 5 March 1975 a Statement of Charges was filed in the District Court of Maryland, District 1, charging Sandra Barnes with shoplifting proscribed by Code, Art. 27, § 551A. She demanded a jury trial. Courts Art. § 4-301 (2) and § 4-302 (d). When the case came on for trial in the Criminal Court of Baltimore on 14 July 1975, the prosecutor informed the court, Baer, J., presiding: "This is to be a statement of facts on a not guilty plea." Barnes was rearraigned. Defense counsel said: "The plea would be not guilty. We have had prior discussions with the State. We have agreed to proceed on a statement of facts. I believe my client understands what that is and how that works and we are ready, willing,

and able to proceed at this point, Your Honor." The prosecutor gave a statement of facts:

"Your Honor, may it please the court, the statement of facts in this case would be as follows. If called to testify Special Officer Albert Jones employed by the Food-A-Rama Incorporated, a body corporate of the State of Maryland, located at 3420 Clifton Avenue would state that on March 5, 1975 at approximately eight-fifty in the evening he had occasion to be on duty in those premises at the Food-A-Rama at the address I have already indicated in the City of Baltimore. At which time he observed the defendant who at that time was standing in the line at the cashier located inside of the food store. At that time he observed her remove a two pound box of Domino sugar, property of the store, valued at $1.33, place the same in her purse which was a black shoulder bag which she was carrying at that time on her shoulder and zip up the bag. That he did not observe her pay for the sugar, but I have already indicated that at the time he saw her she was in line. He would identify the lady seated at the trial table next to Mr. Sherman as the lady that he saw. This did occur in the City of Baltimore. That would be the statement of facts. The officer is not present."

The judge asked if there were any additions or corrections and defense counsel said:

"The only addition, Your Honor, or correction would be that I believe that the police officer would testify if he was here that Miss Barnes was standing fourth in line when he first accosted her and she had her hands full of other groceries. I think it was a cabbage and something else. I am not sure what and the purse was on her shoulder [with the sugar in it]."

Defense counsel moved for judgment of acquittal. Code,

Art. 27, § 593 and Maryland Rule 755, implementing Art. XV, § 5 of the Constitution of Maryland.

Of course, an accused must be acquitted if the evidence is not legally sufficient to sustain his conviction. "To be sufficient in law to justify a conviction, the admissible evidence adduced must show directly, or circumstantially, or support a rational inference of, the facts to be proved from which the trier of fact could fairly be convinced, beyond a reasonable doubt, of the defendant's guilt of the offense charged." *Metz v. State*, 9 Md. App. 15, 23 (1970); see *Robinson v. State*, 17 Md. App. 451, 459-460 (1973). Thus, evidence is the means whereby a fact in controversy may be established or disproved.[1] 1 *Wharton's Criminal Evidence* §§ 2-8 (13th ed. 1972). It is the function of the trier of fact, be it court or jury, to determine the facts from the evidence before it. Ordinarily, in the conduct of a criminal case upon a plea of not guilty, the State offers evidence to establish facts tending to show that the crime charged was committed and that the accused committed it, that is, the State attempts to prove the *corpus delicti* and the criminal agency of the accused. The defense may deny, refute or dispute this evidence. It does so by offering evidence to establish facts tending to show that the crime charged was not committed, or, if it was, that the accused did not commit it, or if he did commit it, that he was not culpable. See *Whitehead v. State*, 9 Md. App. 7, 9-11 (1970). This inevitably results in conflicts in the evidence and it is the duty of the trier of fact to resolve those conflicts so that it may determine the facts upon which it may properly decide whether the accused was guilty or innocent. In resolving the conflicts, and making factual findings from the evidence, the trier of fact weighs

---

1. In broad terms evidence is classified as testimony, documentary evidence, and real evidence. "Testimony is evidence given orally by persons who are cognizant of the relevant facts. Recognized exceptions to this requirement of knowledge are dying declarations, extrajudicial confessions, and res gestae statements. Documentary evidence consists of writings, such as judicial and official records, contracts, deeds, and less formal writings, such as letters, shopbooks, and memoranda. Maps, diagrams, and photographs may also be categorized as documentary evidence, although they are usually discussed separately. Real evidence consists of any other form of tangible property." 1 Wharton's Criminal Law § 5 (13th ed. 1972).

that evidence and judges the credibility of the witnesses. The weight to be given evidence and the credibility of the witnesses are matters solely for the trier of fact. *Weaver v. State*, 226 Md. 431, 436 (1961). See *Williams v. State*, 5 Md. App. 450, 452-460 (1968), *cert. den.*, 252 Md. 731 and 734 (1969). This is why, on appellate review of the sufficiency of the evidence when an action has been tried by the lower court without a jury, the appellate court may not set aside the judgment of the lower court on the evidence unless clearly erroneous after giving due regard to the opportunity of the lower court to judge the credibility of the witnesses. Maryland Rules 886 and 1086. It is also why, on appellate review of the sufficiency of the evidence, when an action has been tried before a jury, it has been said that the guilty verdict may be set aside only if there is no legally sufficient evidence or inferences drawable therefrom on which the jury could find the accused guilty beyond a reasonable doubt. *Wilson v. State*, 261 Md. 551, 563-564 (1971). See *Williams v. State, supra*, at 458-460.

The proper means to challenge the sufficiency of the evidence in the trial court is by a motion for judgment of acquittal. Rule 755, § a. It may be made by an accused at the close of evidence offered by the State or at the close of all the evidence. If the motion is not granted at the close of evidence offered by the State, the accused may offer evidence, but by so doing, he withdraws his motion. Rule 755, § b.[2] In a criminal action tried before a jury, appellate review of the sufficiency of the evidence may be had only upon the denial of a motion for judgment of acquittal at the close of all the evidence. *Lotharp v. State*, 231 Md. 239, 240 (1963); *Williams v. State, supra*, at 455-456. In a criminal action in which the court is the trier of fact, the appellate court must entertain the issue of the sufficiency of the evidence when presented on appeal even in the absence of a motion for judgment of acquittal below. *Williams*, at 456, n. 10. This is so because Rules 886 and 1086 expressly provide: "When an action has

---

**2.** The trial court on its own motion may determine that a judgment of acquittal should be granted. Rule 755, § c.

been tried by the lower court without a jury, [the appellate court] will review the case upon both the law and the evidence . . . ."

At the time defense counsel moved for judgment of acquittal below, the facts had been established by agreement. Although not expressly presented as an "agreed statement of facts", it is manifest that after the addition suggested by defense counsel, the facts, as given to that point, were not disputed. There was no evidence for the court as the trier of fact to weigh and no need to judge the credibility of a witness. There was no conflicting evidence which required resolution to enable the court to determine the facts. All that remained to be done was for the court to apply the law to the undisputed facts of the case. Problems arose when the court did so.

When defense counsel moved for acquittal he said: "I would offer a motion for judgment of acquittal based on that statement of facts on the basis that the officer may have acted, I believe in this case, prematurely." The court asked: "How?" and counsel replied: "She was standing in line to pay. She did not yet refuse to pay although she had according to the officer concealed the two pound box of sugar." The transcript reads:

> "THE COURT: Under the shoplifting law is not the act of shoplifting committed as soon as you conceal it?
>
> MR. SHERMAN [Robert Sherman, defense counsel]: No, Your Honor, under the shoplifting law the act is done as soon as one intends to steal it.
>
> THE COURT: Doesn't the law indicate — —
>
> MR. SHERMAN: The act of concealing it is not necessarily synonymous with intention.
>
> THE COURT: Doesn't the law specifically state that when you conceal it you have committed the crime.
>
> MR. SHERMAN: No sir, not that I know of.

THE COURT: It does not. Is that 551A?

MR. SHERMAN: I believe it is, Your Honor.

THE COURT: Is that the section, 551A? In a mercantile establishment it is unlawful for any person to conceal any goods, wares, or merchandise.

MR. SHERMAN: With the intent —

THE COURT: Of course, then it refers to the intent.

MR. SHERMAN: I believe it says with the intent.

THE COURT: When you conceal it, you have the intent under this section. All right."

What happened next completely changed the status of the trial. Without objection noted, defense counsel proffered evidence:

"[I]f Miss Barnes was called to testify, she would testify as follows. She was indeed standing in line. She had recently been out of the hospital where she had a D and C and some stitches. She was standing in line with her hands full of groceries. She had a two pound box of sugar which she placed in her pocketbook, which remained open at all times, to hold it. While she was waiting to pay she was accosted and arrested before she had a chance to get to the cashier to pay for the merchandise. She did not conceal the sugar. She did not have any intention to conceal it. She was merely holding it waiting to pay and had approximately $20.00 on her when she was arrested and had every intention of paying for it. She said it was sticking out of her pocketbook and I would also again point out that the special police officer did not come here today. She went into the hospital on January 23, 1975 and this occurred on the 5th of March. She was in the hospital for approximately a week to ten days and had just been in the process of recuperating. She has one child and she was working at that time before she went into the hospital at King's Carry

Out. She had worked there for ten months and Arundel Ice Cream three months before that. She is presently currently unemployed and drawing unemployment and hoping to obtain a job. Again as I said before, she has one child that she supports and the problem in this case, Your Honor, is that she has a prior record for shoplifting in 1971."

No longer were the material facts undisputed. This evidence received without objection as to what the accused would say if she testified was in direct conflict with the evidence received by way of stipulation as to what the State's witness would say if he testified. The State's evidence tended to establish the fact that the accused concealed the merchandise. The defense's evidence tended to establish the fact that the accused did not conceal the merchandise. It became the duty of the court as the trier of fact to resolve this conflict in the evidence and find as a fact that the accused did put the merchandise in her purse and zip up the purse so as to conceal the merchandise, as the State's evidence indicated, or to find as a fact that after putting the merchandise in her purse, she did not zip up the purse so as to conceal the merchandise, but rather left it in plain view, "sticking out of her pocketbook." Obviously, although implicitly, the court resolved the conflict by finding as a fact that the accused concealed the merchandise, for without further ado and with no comment whatsoever, it rendered a verdict of guilty. It then inquired if defense counsel had anything additional in mitigation of sentence. The transcript reads:

"MR. SHERMAN: Yes, Your Honor. The only thing additional is that the presumption that one — I am sorry. It goes to verdict, Your Honor. The presumption is that if one secretes something one intends to steal it but that presumption is rebuttable and I again point out to Your Honor that at the point in time when she was arrested and accosted she was standing in line at the cashier to pay. The only question was —

THE COURT: You are not speaking in mitigation.

MR. SHERMAN: No, I am not. I said I am speaking in terms of verdict.

THE COURT: I have already considered that."

There was nothing further in mitigation. A sentence of 60 days in the Baltimore City Jail was imposed. Barnes appealed.

On appeal Barnes raises the question of the sufficiency of the evidence. As we have indicated, the issue is properly before us under Rule 1086 even though there was no motion for judgment of acquittal made at the close of all the evidence.

Code, Art. 27, § 551A sets out five acts which constitute the crime of shoplifting. Subsection (a) (3) makes it unlawful for any person in any mercantile establishment to conceal any goods, wares or merchandise "with the intent to appropriate the same to the use of the person so taking, or to deprive the owner of the use, or value, or any part thereof." Barnes claims that "the evidence of intent presented below was insufficient because the mere act of concealment, standing alone, did not establish the required intent." The State counters by urging that "the act of concealment gave rise to a rational inference that she intended to shoplift the items." It alleges that the trial court properly found the requisite intent from the act of concealment.

It may well be that in a mercantile establishment the concealing of goods under circumstances which the evidence offered by the State tended to show, would support a rational inference that the person concealing them intended to appropriate them.[3] To support such inference, however, it is necessary in any event that the fact of concealment by the ac-

---

3. The commission of the other acts designated in § 551A (a) may also, in appropriate circumstances, support a rational inference of the intent required to make the act the crime of shoplifting. Those acts are by numbered paragraph: (1) removal of any goods from the immediate place of display or from any other place within the establishment; (2) obtaining or attempting to obtain possession of any goods by charging them to a real person without authority or to a fictitious person; (4) altering, removing, or otherwise disfiguring any label or price tag; (5) transferring any goods from a container in which they are displayed or packaged to any other container.

cused be first established. As we have observed, the evidence offered by Barnes put the facts in dispute. Then there was conflicting evidence before the court. There was evidence, which, if found credible, was sufficient in law to support a finding that Barnes concealed the merchandise, and there was evidence, which, if found credible, was sufficient in law to support a finding that Barnes did not conceal the merchandise. As is patent from the verdict, the court resolved this conflict by believing the State's witness, and accepted that version of what occurred, finding as a fact that Barnes concealed the merchandise. It necessarily follows, that in order to find beyond a reasonable doubt that the offense was committed and that Barnes committed it, the court did not believe Barnes, and rejected her version that she did not conceal the merchandise. Ordinarily, this would be perfectly proper. As we have indicated, it is the function of the trier of fact in such a situation to resolve evidentiary conflicts. In performing this function, it may believe one witness and disbelieve another, for the credibility of the witnesses and the weight to be given the evidence are matters for it. The rub here is that, in the circumstances, there was no proper basis on which the court could resolve the conflict. Certainly, neither the State's evidence nor the defense's evidence was inherently incredible. Neither witness from whom the evidence emanated appeared before the court; the court was merely told what the witnesses would say if they testified. There were simply no factors apparent from the record before us which would enable the court to judge the credibility of either witness, or the reliability of the evidence offered through them. The court expressed no reasons for the finding inherent in its verdict and gave no clue as to why it concluded, in the face of the conflicting evidence, that Barnes concealed the merchandise. As we see it, in the circumstances, the only way the court could have resolved the conflict in the evidence, and made a factual finding that the merchandise was concealed, was by arbitrary choice. We believe a choice so made to be capricious, and a determination of guilt beyond a reasonable doubt may not be properly bottomed on it. Therefore, the

judgment of the court on the evidence was clearly erroneous, and we shall reverse it.

This case serves to point up an apparent confusion which seems to be shared by some members of the bench and bar in the trial of criminal cases. There is a distinction between an *agreed* statement of facts and evidence offered by way of stipulation. Under an agreed statement of facts both State and the defense agree as to the ultimate facts. Then the facts are not in dispute, and there can be, by definition, no factual conflict. The trier of fact is not called upon to determine the facts as the agreement is to the truth of the ultimate facts themselves. There is no fact-finding function left to perform. To render judgment, the court simply applies the law to the facts agreed upon. If there is agreement as to the facts, there is no dispute; if there is dispute, there is no agreement. It would be well, to avoid confusion, that when the parties are in agreement on the facts, the statement of them begin with language to the effect, "It is agreed that the following facts are true. . . ."

On the other hand, when evidence is offered by way of stipulation, there is no agreement as to the facts which the evidence seeks to establish. Such a stipulation only goes to the content of the testimony of a particular witness if he were to appear and testify. The agreement is to what the evidence will be, not to what the facts are. Thus, the evidence adduced by such a stipulation may well be in conflict with other evidence received. For the trier of fact to determine the ultimate facts on such conflicting evidence, there must be some basis on which to judge the credibility of the witness whose testimony is the subject of the stipulation, or to ascertain the reliability of that testimony, to the end that the evidence obtained by stipulation may be weighed against other relevant evidence adduced. It is in this frame of reference that Rule 1086 speaks of giving due regard to the "opportunity" of the lower court to judge the credibility of the witnesses. We note that the usual way of introducing such a stipulation — "If John Doe were to testify, he would testify as follows . . . ." — makes clear the status of the evidence so offered.

We can conceive of a variety of factors which would afford the fact-finder the opportunity to judge the credibility of a witness, or the reliability of the evidence offered through him, without observing the witness, but they are best left to a case by case consideration. What bench and bar should be alert to recognize so appropriate corrective measures may be timely taken, is a case like the case *sub judice*. Here, despite the original intention, evidence ultimately offered was actually conflicting in material part so that there was no agreement as to the facts, and no opportunity for the fact-finder either to judge the credibility of the witnesses through whom the conflicting evidence was offered by stipulation, or to ascertain the reliability of that evidence. Without such opportunity, there was no proper way to resolve the evidentiary conflicts in order to determine ultimate facts which would be sufficient in law to sustain a verdict of guilty.

> *Judgment reversed; case remanded for a new trial; costs to be paid by the Mayor and City Council of Baltimore; mandate to issue forthwith.*