# RANGER INSURANCE COMPANY *v.* NATIONWIDE MUTUAL INSURANCE COMPANY

[No. 49, September Term, 1976.]

*Decided November 4, 1976.*

The cause was argued before MOYLAN, MENCHINE and LOWE, JJ.

*Samuel S. Smalkin* for appellant.

*Phillips L. Goldsborough,* with whom were *Howard G. Goldberg* and *Smith, Somerville & Case* on the brief, for appellee.

LOWE, J., delivered the opinion of the Court.

Appeals frequently become necessary because a party assumes that a trial judge knows as much as he does.[1] Error occurs when the trial judge makes the same assumption.

Ranger Insurance Company (Ranger) sued Nationwide Mutual Insurance Company (Nationwide) in the Superior Court of Baltimore City. The case was tried upon an "Agreed Statement of Facts" supplemented by a minimum of testimony and evidence. The Agreed Statement of Facts hardly provided a skeleton of the case:

## "AGREED STATEMENT OF FACTS

1. On July 18, 1971 Budget Rent A Car rented to one John Carr an automobile which was involved in an accident on that day at the intersection of Belvedere Avenue and Bellona Avenue in Baltimore City, Maryland, while being operated by Carr.

2. At the time of the leasing of the vehicle, the rental agreement between Budget Rent A Car and Carr provided in pertinent part: 'Customer shall be insured under Budget's automobile liability insurance policy, but only if customer has no other liability insurance available to customer with respect to customer's use of the rental vehicle. Limits of liability available under Budget's automobile liability policy shall in no event exceed the limits specified in the Financial Responsibility Laws of this State.'

3. A copy of relevant portions of said policy of

---

1. The mistake of assuming that appellate judges have such knowledge is less frequent.

automobile liability insurance issued by Ranger Insurance Company to Budget Rent A Car is attached hereto and is intended to be incorporated herein by reference. [2]

4. At the time of the accident of July 18, 1971, there was in full force and effect a policy of automobile liability insurance issued by Nationwide Mutual Insurance Company to Carr. A copy of relevant portions of said policy of automobile liability insurance issued by Nationwide Mutual Insurance Company is attached hereto and is intended to be incorporated herein by reference.

5. The accident of July 18, 1971 was caused solely by the negligence of Carr in his operation of the automobile rented by him from Budget Rent A Car. As a result of said accident, bodily injuries and property damage have been settled by Ranger Insurance Company for the total sum of $5,000.00. Said settlement is fair and reasonable in amount."

Neither the record nor the extracts contain a policy from Ranger to Budget. More significantly, the relevant portions (*i.e.*, an alleged contingent clause) are nowhere to be found. The declaration, however, alleges that such policy did exist and that it contained a contingent insured clause insuring:

"Any person or organization using a rental vehicle with the permission of the owner, but only if such person or organization has no other automobile liability insurance available to him for the limits of liability at least equal to the Financial Responsibility Limits, whether on a primary, contributory, excess, or any other basis with respect to his use of the rental vehicle."

By contrast, the Nationwide-Carr policy is in the record and

---

2. There was no appendage as described and, as will be noted, this statement falls short of asserting that there was a policy in effect issued by Ranger and insuring Budget at the time Carr leased the vehicle.

was attached to the stipulation. It contained an excess insurance clause which stated that:

"... the insurance with respect to temporary substitute automobiles ... shall be excess insurance over any other valid and collectible insurance."

Having settled the claim against Carr, after demand to defend Carr was made to Nationwide, Ranger sued Nationwide for indemnification, contending that its contingent clause prevailed over Nationwide's excess clause, citing *State Farm v. Universal Underwriters*, 270 Md. 591, as authority. At trial, Ranger produced no witnesses, but did introduce two exhibits:

1. a certificate issued by the Insurance Commissioner showing that a "Special Automobile Rental Liability Policy" was filed and approved by the State Insurance Division on *December 15, 1971*, and
2. the automobile rental agreement between John Carr and Budget.

Nationwide then called an employee of the Insurance Division as its witness. Through him it introduced correspondence indicating that:

1. On June 4, 1971 Ranger had submitted "a Special Automobile Rental Liability Policy for filing with your office, ...." There is no indication who — if anyone — was the intended insured.
2. On July 9, 1971 a letter indicating disapproval was mailed by the Insurance Division to Ranger. The reason for disapproval was the policy's "... failure to meet the Financial Responsibility Law ...."
3. Ranger responded to that disapproval by letter dated July 15, 1971. It recognized that the policy's contingent insurance clause was one

reason for the disapproval, but requested reconsideration.

4. An exchange of correspondence followed, including submission by Ranger of several registered amendments and endorsements.

5. After several endorsement proffers were rejected, the Insurance Division approved an endorsement on December 6, 1971 and the policy as a whole on December 15, 1971.

The trial judge decided that, under the Financial Responsibility Law, the Legislature intended:

" ... as a matter of public policy, that those who provide vehicles for hire must also protect the public by providing insurance coverage for those authorized to drive such rental vehicles."

He further held that the Insurance Commissioner's initial rejection of the policy and the several endorsements was proper because Ranger's policy did not provide *primary* insurance for Budget's customers. He held that Md. Code, Art. 66½, § 8-101 reflected the intent of the General Assembly that such required insurance be *primary* insurance. That section reads:

"(a) The Department [3] shall not register any motor vehicle, trailer or semitrailer to be rented, unless and until the person owning such vehicle shall certify financial responsibility as provided by this article, and such certification has been accepted by the Department, and the Department shall suspend the registration of any such vehicle whenever the Department ascertains that such owner has failed, or is unable, to maintain such proof of financial responsibility.

(b) Certification required under this section shall cover every person using or operating a vehicle

---

3. The 1972 amendment to this section by Ch. 81 substituted the word "Administration" for "Department" in subsection (a).

under a rental agreement and shall also cover the person owning such motor vehicle.

(c) Any person violating the provisions of this section shall be deemed guilty of a misdemeanor."

He, therefore, concluded that Ranger could not prevail against Nationwide because:

" . . . (1) if the policy was in force, Ranger is primarily liable, and (2) if the policy was not in force, Ranger has no standing against Nationwide in a suit for indemnification."

Ranger does not question the judge's alternate conclusion. Instead, Ranger disputes the holding that § 8-101 places the primary liability upon it. It further argues that the Insurance Commissioner wrongfully disapproved its policy and that it was, therefore, in force. From that premise it contends, as noted, that the contingent insured would prevail over Nationwide's excess coverage clause. But because Ranger failed to prove that the policy it allegedly issued Budget contained a contingent insured clause, we see no way we can reach the merits of Ranger's arguments.

For Ranger to have an enforceable claim against Nationwide it had to show, *inter alia*:

that Nationwide issued an insurance policy to Carr and that the policy, by its terms, covered the July 18, 1971 accident;

that Ranger issued an insurance policy covering Carr and that the policy, by its terms, covered the July 18, 1971 accident; and

that Ranger's responsibility was secondary to Nationwide's.

These prerequisites had to be more than merely alleged; they had to be proven either by evidence or by agreement between the parties. The first element was satisfied by the stipulation, in the Agreed Statement of Facts, that Nationwide insured Carr. A copy of the pertinent terms of that policy was attached to the Agreed Statement of Facts.

While it was equally important that Ranger also establish that it insured Carr, the proof of this element was less than satisfactory. The existence of such a policy was only alluded to in the Agreed Statement of Facts, Nationwide never expressly admitted that Ranger had insured Carr, and a copy of that alleged policy was neither appended to the Agreed Statement of Facts nor introduced into evidence. Nevertheless, a fact-finder could reasonably infer that Ranger had issued *some* policy which purported to cover Carr. But a fact-finder would not be at liberty to speculate about the contents of that policy. This is particularly true here, for the very heart of Ranger's indemnification claim is its assertion that the policy contained a contractual absolution of responsibility to Carr and that, by virtue of this particular clause, its responsibility to Carr was contingent upon Carr's inability to collect insurance from Nationwide. It is, therefore, clear that Ranger must *prove* that its policy contained the alleged contingent insured clause.

The only evidence before the court below of the contents of *any* Ranger policy was the blank form policy. This policy had been approved by the Insurance Commissioner on December 15, 1971, nearly 5 months after Carr's accident. Contrary to appellant's contention in its brief, this policy was not appended to the Agreed Statement of Facts. Instead, it was attached to the certificate of approval from the Insurance Commissioner which was introduced at trial with the unenlightening proffer:

> "MR. SMALKIN: I would also like to file, if the Court please, a certificate from the Department of Licensing and Regulations dated March 5, 1974, which goes back to the 1971 policy.
>
> THE COURT: Do you want to file that as an exhibit? Plaintiff's Exhibit 1."

While we have strained to infer from the Agreed Statement of Facts that *some* policy was issued by Ranger to Budget which purported to cover Carr, a fact-finder would go too far if he were to assume from that exhibit or its proffer, that

the purported Ranger-Budget policy at the time of the accident was the same as the blank form policy approved by the Insurance Commissioner 5 months after the accident.

Absent evidence or agreement that the policy issued by Ranger contained the contingent insured clause upon which Ranger relied, the trial court's exercise in statutory interpretation became an exercise in futility. The court may not presuppose matters of evidence that have not been proven or stipulated. Nor may it judicially notice a contract provision not in evidence since such provision is neither a self-evident nor a notorious fact. *Cf. Macht v. Hecht Co.*, 191 Md. 98, 102; *Barsallo v. Barsallo*, 18 Md. App. 560, 565-567. Thus in the absence of evidence of such a provision in its policy, it is of no consequence whether Ranger's payment on Carr's behalf was under a valid policy, a purported policy or gratuitously under no policy at all. Ranger did not produce evidence in any form sufficient to raise the issue of whether it or Nationwide was the primary insurer against Carr's accident.

Nor does it alter the result whether the "Agreed Statement of Facts" may have been in actuality that which it was entitled or more in the nature of a stipulation. As we pointed out in *Barnes v. State*, 31 Md. App. 25, 35:

> "Under an agreed statement of facts . . . [t]here is no fact-finding function left to perform. To render judgment, the court simply applies the law to the facts agreed upon."

If the judge had limited his application of the law to the facts in the Agreed Statement he could not have reached the ultimate issue because there is no statement of what Ranger's policy had purported to cover for Budget.

If, however, the "Agreed Statement of Facts" were in reality a stipulation as to certain facts only — as it appears to have been since both parties supplemented it by the introduction of evidence — the need to provide the relevant language of the policy sued upon is equally evident.

Finally, even if we could assume that the form policy submitted to the Insurance Commissioner on June 4, 1971

and finally approved (with endorsement U4172) on December 15, 1971, 5 months after the Carr accident, was the same as the Ranger-Budget policy presumably issued to Budget sometime prior to the accident, Ranger still may not recover.

The evidence showed that the form policy was submitted for approval to the Insurance Commissioner on June 4, 1971, but not disapproved until July 9, 1971. Under Md. Code, Art. 66¹/₂, § 7-324, a policy submitted is deemed approved after 30 days if not disapproved within those 30 days. Thus, it would appear possible that the form policy had been approved by operation of law and later revoked in accordance with the Commissioner's authority to do so under that section.

The statute provides for the circumstance where a policy has been issued by an insurer, approved by the Commissioner of Insurance, but then revoked by the Commissioner. See § 7-324 (b).[4] The company, even if it did in fact issue a policy purporting to comply with the financial

---

4.

"§ 7-324

. . .

(b) *Disapproval of policy by Commissioner of Insurance.* — If within the 30 days the Commissioner of Insurance disapproves the form of policy upon the ground that it does not comply with the requirements of this sub-title, he shall give written notice thereof and his reasons therefor to the carrier and to the Department or the Public Service Commission as the case may be, and the policy shall not be accepted as proof of financial responsibility under this subtitle, provided that, if after a form of policy shall have been approved by the Insurance Commissioner, either by his failure to take formal action thereon, or otherwise, he may at any time for good and sufficient reason revoke his approval thereof, and give notice of his disapproval to the carrier and to the Department or the Public Service Commission as the case may be, and no permits shall · be issued by the Department or the Public Service Commission as the case may be, on the policies, after the receipt of the notice. The Department or the Public Service Commission·as the case may be, shall forthwith notify all persons operating under permits issued on the basis of the disapproved policies that the form has been disapproved and that their permits will stand revoked unless satisfactory proof of financial responsibility in a policy whose form has been approved by the Insurance Commissioner is submitted within 30 days after the date of mailing of the notice."

responsibility laws of the State, is statutorily bound by its act even in the event of subsequent revocation for noncompliance:

"§ 7-324. REQUIREMENTS FOR POLICY OF INSURANCE OFFERED AS PROOF.

(a) *Definition; approval of Commissioner of Insurance; effect of issuance of policy or filing of certificate.* — A policy of insurance, as that term is used in this subtitle, when offered as proof of financial responsibility under this subtitle, means an automobile public liability and property damage policy, issued by an insurance carrier authorized by the Commissioner of Insurance of the State of Maryland to transact business in this State. A copy of the form of the policy shall be filed with the Commissioner of Insurance who shall within 30 days approve or disapprove of the same. If the Commissioner of Insurance approves the same within such time or fails to take action for 30 days the form of policy shall be deemed approved; provided, however that the Insurance Commissioner shall not approve, and his failure to approve or disapprove shall not be deemed an approval of, a form of policy which does not meet the minimum requirements specified in this subtitle. And provided further that *when a policy of insurance has been issued which purports to be under the terms of this subtitle,* or when a duly authenticated certificate of the insurance carrier has been furnished to the Department or the Public Service Commission as the case may be under the terms of this subtitle, *the insurance carrier shall be obligated at least to the extent of the minimum requirements of this subtitle, any provision of the policy of insurance to the contrary notwithstanding.* " (emphasis added).

The language of that section clearly contemplates the

precise circumstance here provided. To bring the terms of this section into play it is sufficient that a policy was issued prior to final approval, purporting to conform to the Financial Responsibility Subtitle requirements. The very issuance of such policy purporting to so comply obligated Ranger to the minimum financial responsibility requirements. The section concludes with a clause which disposes of Ranger's reliance upon the contingent insured provision:

" . . . any provision of the policy of insurance to the contrary notwithstanding."

Whether the Legislature intended that the coverage contemplated by § 8-101, standing alone, be primary was a question the trial judge below did not have to reach. § 8-101 does not set forth standards of certification of policies by the Insurance Division. It provides that there must be proof of financial responsibility for the Department of Motor Vehicles to register, or continue the registration of, "for-rent vehicles". A policy issued purporting to fulfill these registration prerequisites of § 8-101 by providing "proof of financial responsibility" falls under the requirements of § 7-324. Clearly the Legislature did intend that the company purporting to issue *any* policy offered as "proof of financial responsibility" prior to approval (or after disapproval) would be primarily obligated under § 7-324 (a). The statutory provision negating the effect of any policy provision to the contrary adds emphasis to the intent of the Legislature to provide protection to the public from those companies who choose to act before receiving the Insurance Division's approval.

Furthermore, appellant's case is premised upon a belated collateral attack upon the disapproval of the form policy by the Insurance Commissioner. Having acquiesced in that decision through negotiations which eventually resulted in a policy which eliminated the Insurance Commissioner's grounds of disapproval, we fail to see how appellant has standing now to attack the disapproval collaterally in a suit

against another insurance company. The Legislature provided an administrative remedy in the event of disagreement. See Md. Code, Art. 48A, § 242B. Appellant complains belatedly and in the wrong forum.

*Judgment affirmed.*
*Costs to be paid by appellant.*