961 A.2d 603

**Matthew POLK**

v.

**STATE of Maryland.**

**No. 1985, Sept. Term, 2007.**

Court of Special Appeals of Maryland.

Dec. 3, 2008.

Brian M. Saccenti (Nancy S. Forster, Public Defender, on brief), Baltimore, MD, for Appellant.

Michelle W. Cole (Douglas F. Gansler, Atty. Gen., on the brief), Baltimore, MD, for Appellee.

Panel: HOLLANDER, CHARLES E., MOYLAN, JR. (retired, specially assigned) and RAYMOND G., THIEME, JR. (retired, specially assigned), JJ.

CHARLES E., MOYLAN, JR., Judge (retired, specially assigned).

### Sailing Close to the Wind

Entrusting the legal sufficiency of the State's evidence to a sometimes hastily composed statement of facts can turn out to be a case of the State's sailing dangerously close to the wind. It can be done, but it should be done with great care. This appeal well illustrates the dangers. A generous plea bargain was offered in exchange for, not a guilty plea on the part of the defendant but, an agreement to submit the case to the trial judge on an agreed statement of facts. Ironically, what frequently appears to be an almost total "cave in" on the part of a defendant may sometimes, as in this case, turn out to be a risky gamble for the prosecutor to take. The danger is that the mood and tenor of the proceedings give every appearance that the defendant is content to accept the lesser penalty agreed upon and is uninclined to protest in any way about anything. That easy-going geniality may insidiously lull the prosecution into letting down its guard and becoming less than vigilant in its composition of the statement of facts. Preparing such a statement can be a tricky exercise and should never

be approached casually. If the trap is then sprung, a charge perhaps that the statement of facts failed to establish some particular element of the crime, it may already be too late for the prosecution to react.

## The Present Case

In a non-jury trial in the Circuit Court for Baltimore City, the appellant, Matthew Polk, was convicted, on the basis of an agreed statement of facts,[1] of wearing and carrying a concealed dangerous weapon in contravention of Maryland Code, Criminal Law Article, § 4-101(c)(1), which provides:

> A person may not wear or carry a dangerous weapon of any kind *concealed* on or about the person.

(Emphasis supplied).

On this appeal, the appellant raises the single contention that the State's evidence, as reflected by the statement of facts, was not legally sufficient to support the conviction. The appellant does not argue that he was not carrying a dangerous weapon. He argues strenuously, however, that the weapon he was carrying was not concealed. Concealment is our only concern.

In this case, both the State and the trial judge had reached an agreement with the appellant that he would receive a suspended sentence of 18 months with 18 months of probation if he waived his right to a full confrontational trial. Instead of entering a guilty plea for his part of the bargain, however, the appellant agreed to submit the case to the judge on a statement of facts.[2]

---

1. For an excellent analysis of the difference between an agreed statement of facts and a stipulation as to testimony, the discussion by Chief Judge Orth for this Court in *Barnes v. State*, 31 Md.App. 25, 35, 354 A.2d 499 (1976), is the Ur text.

2. In *Sutton v. State*, 289 Md. 359, 365–66, 424 A.2d 755 (1981), Judge Davidson explained for the Court of Appeals how closely a submission on an agreed statement of facts can resemble a guilty plea.

> [T]he attorney for the petitioner *tendered a plea of not guilty upon agreed facts.* The petitioner was advised that she was charged with

Immediately following the denial of the appellant's motion in limine, the stage was set for submitting on the statement of facts.

THE COURT: So the Motion in Limine is denied.

Do you want to go for the miscellaneous agreement where you get to reserve that point for appeal, yet you still get the 18 months suspended, 18 months probation?

MS. COHEN [DEFENSE COUNSEL]: Sure, Your Honor.

THE COURT: Have your client waive jury and confrontation, although he's had pretty much confrontation anyhow.

MS. COHEN: Okay. So advise him just of his right to a jury trial that is a—

THE COURT: And any extra confrontation beyond what he's already had.

MS. COHEN: Okay.

*You understand by proceeding this way,* you're giving up your right to having a jury trial and that means *the State's gonna read into the record the Statement of Probable Cause. The judge is gonna find you guilty simply based*

---

assault. While she was not questioned by the trial court, she did indicate agreement with her attorney's assertions that she was waiving her right to a jury trial, to confront witnesses, to testify, and to deny the allegations of assault. *She further agreed* with her attorney's assertion *that she was advised of the terms of a plea bargain and was told that the trial court had indicated that she would be placed on probation....*

*The State then presented an agreed statement of facts* that delineated conduct that showed an apparent assault and that raised no defense. At the close of the State's case, *the petitioner, "merely for the record," made a motion for judgment of acquittal that was denied. Thereafter, she* presented no evidence and *renewed her motion for judgment of acquittal that was again denied.*

Trying a case on an agreed statement of facts ordinarily does not convert a not guilty plea into a guilty plea. But here the totality of the circumstances, and in particular, *the facts that the petitioner's plea was entered at the direction of the trial court and that she was aware that she would be placed on probation, shows that the proceeding was not in any sense a trial and offered no reasonable chance that there would be an acquittal.* Under these particular circumstances, the petitioner's plea was the functional equivalent of a guilty plea.

(Emphasis supplied).

*on that.* You're not gonna confront any of the State's witnesses. You're not gonna put on your own defense, testify or remain silent, and you're not gonna compel any of your witnesses to come to court. Do you understand that?

(Emphasis supplied). The appellant indicated that he did "understand that." In any event, he makes no contention now that he did not.

### The Four Corners of the State's Case

In advising the appellant as to how the trial would proceed, defense counsel referred to the anticipated statement of facts as a case of "read[ing] into the record the Statement of Probable Cause." The trial judge instructed the prosecutor to "put on the State's case in chief as though it was unobjected to." In any event, the prosecutor then recited as follows:

State's statement of facts is as follows for Mr. Matthew Polk, 807283005, that on September 6th, 2007 at 10:50 in the morning, Officers Schneider and Moro of the Central District Baltimore City Police Department were in the 800 block of Lennox. Officers observed a car parked with an altered temp tag. The car drove off. Officers followed, observed the front passenger not wearing his seatbelt.

A car stop was effected. Rear passenger was seen moving around in the backseat. He was asked to raise his hands for officer safety. The Defendant, Mr. Polk, to my left with counsel, the driver of the car, became argumentative and loud. *Officer Moro was by the passenger side. He observed a five-inch brown fixed blade bowie knife in a sheath wedged near the dash.* Defendant claimed he had the knife because he hunted. Defendant did not have a registration on the car, nor could produce his license. All events occurred in Baltimore City, State of Maryland.

If called to testify, Officers Schneider and Moro would identify Mr. Polk, the Defendant, as the driver of the car that day. That is the State's case.

(Emphasis supplied).

Following that statement, the State rested. The appellant immediately moved for a judgment of acquittal based on the

same argument he had earlier made in support of his motion in limine.[3] That argument was that the State's evidence did not adequately establish that the knife in question was, indeed, concealed. The trial judge denied the motion for the same reasons he had earlier denied the motion in limine.

THE COURT: All right. You're moving for judgment of acquittal based on your Motion in Limine, which is essentially the officer can't call it concealed if you can see it.

MS. COHEN: Yes.

THE COURT: And for the same reason I overruled your Motion in Limine, I'm going to deny the Motion for Judgment of Acquittal.

MS. COHEN: Thank you.

The appellant was then advised by his lawyer of his right to remain silent and of his right to testify. He chose the former and the defense rested. The motion for a judgment of acquittal was immediately renewed with the same result.

THE COURT: All right. *You renew your motion on the same grounds?*

MS. COHEN: *Oh. yeah.*

THE COURT: *I'll deny it.* Do you want to be heard on any other issue but that the officer should not have been able to call that a concealed weapon on the merits?

MS. COHEN: I will just incorporate my argument.

THE COURT: All right. *I find beyond a reasonable doubt that the effort to conceal was the dominant theme,* and even though there was no movement of persons, that there was sufficient description of the officer of what a concealed weapon could be, could look like and could be

---

**3.** From the limited information provided to us, the use of a motion in limine in this case seems to have been a highly unusual procedure. It appears to have been an assessment, pretrial, of the legal sufficiency of the evidence that the State would produce at the trial on the element of concealment, a sort of anticipatory motion for a judgment of acquittal. That is not a proper function for a motion in limine. It is supposed to determine whether an item of evidence in issue will be excluded or will be received in evidence. It is not intended to measure the legal sufficiency of the proffered evidence.

discerned, and that when the officer saw the handle because of his experience as a police officer, because of his heightened perception not to get hurt by anything that might be a weapon—you know, they always say I'd rather have 12 judging me than six carrying me—that it does not mean that in the ordinary pattern of life, that anybody but either a police officer or somebody very paranoid would view that phenomenon as a weapon.

So therefore, *it was sufficiently disguised as to fit the rubric of concealed, and I find beyond a reasonable doubt the Defendant guilty of violating, is it 4–101*

MR. BJORKLUND: Yes.

THE COURT: *—of the Criminal Article, carrying a concealed deadly weapon.*

(Emphasis supplied).

### Standard of Appellate Review

Preliminarily, a word is in order about the scope of our appellate review. An assessment of the legal sufficiency of the evidence is not an evidentiary issue but a substantive issue, with respect to which an appellate court makes its own independent judgment, as a matter of law. This is an area wherein the reviewing court is not at all deferential to the trial court. It makes the same determination on the same basis as does the trial court. In assessing legal sufficiency, we will look only at that which was formally received in evidence. In this case, our evidentiary universe is strictly circumscribed within the four corners of the agreed statement of facts.

### Judicial Role Shifting

It is difficult for a layman to wrap his mind around the notion that "I may know something for certain purposes, but I don't know it for other purposes." For judges, however, such compartmentalizing is Mother's milk. The trial judge in this case had heard, to be sure, some testimony bearing on the same subject at the hearing on the pretrial motion in limine. In a non-jury case, however, a trial judge sits in two very

different capacities. He is ultimately, of course, the fact finder, replacing the jury in that role. He is also, however, the legal referee, sometimes determining what he is permitted to consider as a fact finder and what he is not permitted to consider. *State v. Hutchinson,* 260 Md. 227, 236, 271 A.2d 641 (1970). In assessing legal sufficiency, we measure not everything the judge has heard but only those things that the judge has heard in his capacity as fact finder. Even there, we must calibrate more finely. We measure not everything that the judge 1) would have been permitted to hear as a fact finder and 2) may actually have heard as a legal referee, but only those things that the judge actually heard or had submitted to him when serving **AS A FACT FINDER.**

It is precisely because of a judge's ability to make these fine distinctions that the law routinely allows a judge, in a non-jury case, to rule that a confession is inadmissible, that physical evidence is inadmissible, that an identification is inadmissible, or that any piece of evidence is inadmissible and yet still go on to render a verdict on the merits of the case, notwithstanding having heard perhaps mountains of inadmissible but damning testimony. We trust the judge to compartmentalize.

What the judge in this case heard at the hearing on the motion in limine he heard only in his role as legal referee and not in his role as ultimate fact finder. That testimony, therefore, will not enter into our assessment of the legal sufficiency of the evidence. As a practical matter, that testimony only marginally amplified what was in the agreed statement of facts and would not have tilted our decision in a different direction in any event. We will not, however, rely on that easy way out. This case is representative of a recurring procedural problem, and it behooves us to map out with precision the outer boundaries of legal sufficiency review.

There is an unseen doctrinal barrier between what a judge knows in the left hemisphere of the brain, where legal rulings are made, and in the right hemisphere of the brain, where a judge senses and feels and ultimately finds facts. That barrier in the judicial psyche in a non-jury trial is as sacrosanct as

is the informational barrier between judge and jury in a jury trial.

In this case, the judge was called upon to make a legal ruling on a pretrial motion in limine. He was not hearing or deciding the merits of the case. Indeed, the trial had not yet begun. A jury trial had not yet been waived, and the judge had not yet even been chosen as the fact finder. At the ultimate trial, it was agreed that the case would be submitted to the court on an agreed statement of facts. It was nowhere suggested that the case was being submitted on 1) an agreed statement of facts *plus* 2) whatever else the judge already knew. The State recited its statement of facts and then rested its case. At that point the train had left the station. The State's case never reopened. Our assessment of legal sufficiency must be made on the basis of what the State's case actually was and not on the basis of what the State's case so easily might have been.

### The Lesson of 1908 For 2008

It was never ordained, of course, that the State's case needed to be as scant as it was. It would have been easy for the State to have expanded modestly its statement of facts to include any additional testimony from the arresting officers that had been offered at the pretrial hearing. It would have been easy for the State to have incorporated, en masse, the testimony from the pretrial hearing into the body of material being submitted as the agreed corpus of proof. Neither of those things, however, was done, although they very easily could have been done. For whatever reason, a false sense of security or otherwise, the State did not bother to dot its "i" s and cross its "t" s. One hundred years later, the legendary lesson of Fred Merkle and the 1908 New York Giants still burns as brightly as ever: No matter how overwhelmingly certain the result may seem to be, you cannot neglect to touch the bases.[4]

---

4. On September 23, 1908, with two weeks to go in a tight National League pennant race, Frank Chance's Chicago Cubs were playing John

Even as a judge must compartmentalize in a non-jury trial, so too must we upon appellate review.  It is a commonplace that in reviewing a pretrial suppression ruling, we scrupulously avoid looking at anything that happened in the subsequent trial itself, even if it should flatly contradict things said at the suppression hearing.  By parallel reasoning, when we assess the legal sufficiency of evidence at a trial, we assiduously avoid looking at facts brought out in hearings that were not a part of the trial proper.  In a word, our review is compartmentalized.

### Concealment

■  We now turn our attention to the element of concealment.  Criminal Law Article, § 4–101(a) defines a number of terms in the dangerous weapons law, but it does not define concealment.  In *Shipley v. State*, 243 Md. 262, 269, 220 A.2d 585 (1966), however, Judge Hammond gave us a good general notion.

> By a recognized test *a weapon is concealed if it is* so situated as *not* to be *discernible by ordinary observation* by those near enough to see it if it were not concealed who would come into contact with the possessor in the usual associations of life, but absolute invisibility is not required; since ordinary observation does not extend to *a search*

McGraw's New York Giants in New York. The score was tied and two men were out as New York batted in the bottom of the ninth.  Fred Merkle, in his rookie year, had just singled and was on first base.  Moose McCormick was the runner at third.  When Al Bridwell then slapped what appeared to be a clean hit to centerfield, McCormick crossed the plate easily.  As the game appeared to be over and Giant fans poured onto the field, Fred Merkle, who had run halfway to second base, turned and headed for the Giant's clubhouse in centerfield.  The astute Cub second baseman, Johnnie Evers (of Tinker to Evers to Chance fame), spotted what Merkle had done, retrieved the ball from centerfield, alerted the umpire, and stepped on second base with the ball in hand.  The umpire called Merkle out on a forced play and declared McCormick's "run" invalid.  With thousands of Giant fans all over the field, the game, still tied, could not resume.  When the game was made up on the last day of the season, the Giants and Cubs were tied for first place.  The Cubs won the game, the pennant, and the World Series.  Even when it seems a mere formality, you still have to touch the bases.

*unusually careful, thorough or detailed,* made because of suspicion that contraband which is not visible by ordinary observation may in actuality be present.

(Emphasis supplied). And see *Crosby v. State,* 2 Md.App. 578, 587–88, 236 A.2d 33 (1968); *Smith v. State,* 4 Md.App. 128, 130–31, 241 A.2d 437 (1968).

For all that the agreed statement of facts tells us, it took no "unusually careful, thorough or detailed search" for Officer Moro to see the knife. The stipulation simply recites that he was "by the passenger side [of the car]" when he "observed" the knife. He was not even inside the car; he was just looking in.

In the case of a knife, moreover, its handle is most assuredly a part of the weapon, just as the handle of a revolver or a rifle is a part of the weapon. A knife is not *ipso facto* concealed because its blade is in its sheath, any more than a six-gun is concealed because its barrel is in the holster or a sword concealed because its blade is in the scabbard. Though drawing an inference, perhaps, the reasonable observer knows when he has seen a knife, a six-gun, or a sword. Concealment "should be made of sterner stuff." [5]

The statement of facts, indeed, does not tell us much, if anything, that bears on the element of concealment. It does not tell us that much about the weapon itself. The following is the sum total of the agreed upon facts concerning the weapon:

Officer Moro was by the passenger side. He observed a five-inch brown fixed blade bowie knife in a sheath wedged near the dash. Defendant claimed he had the knife because he hunted.

The fact that the appellant was the driver coupled with the fact that the knife was "near the dash" establishes the necessary linkage to satisfy the element of carrying. The description of "a five-inch brown fixed blade bowie knife" establishes the element of the object's being "a dangerous weapon." On

---

5. Marc Anthony's funeral oration from Shakespeare's *Julius Caesar.*

the precise element of concealment, however, the pertinent part of the statement is reduced to a bare four words:

## WEDGED NEAR THE DASH

That simply will not cut it. Does "near the dash" establish that it was even touching the dash? Was it on top of the dash, underneath the dash, or somehow wedged into the dash? Where was it? Was it over near the glove compartment or partially stuck into an ash tray? Was it wedged sheath first with the handle showing or handle first with the sheath showing? We have no idea because the statement of facts tells us nothing. All it tells us is that Officer Moro, as soon as he looked in through the passenger window, knew that he saw a knife. All he had to do to breach the "concealment" was to open his eyes.

The State may have been caught off guard by the soporific rhythms of a non-trial, but the *in limine* hearing should at least have alerted it to the fact that the appellant's last and only gasp was to challenge the proof of concealment. Under that circumstance, for the State to have restricted its proffered proof of concealment to the austere four words "wedged near the dash" was casual to the point of being cavalier.

The State, at its peril, must approach the preparation of a statement of facts as if it were drafting an important contract. It might even behoove a careful prosecutor to ask another prosecutor to serve as Devil's advocate in reviewing such a statement. The admonition of Judge Battaglia for the Court of Appeals in *Harrison v. State*, 382 Md. 477, 497–98, 855 A.2d 1220 (2004), is the Alpha and Omega:

> This Court and the Court of Special Appeals have heretofore made clear that *prosecutors risk acquittal when a not-guilty agreed statement of facts fails to support the legal theory upon which the State relies. See Bruno v. State*, 332 Md. 673, 684, 632 A.2d 1192, 1197 (1993) (noting that *the State "risk[s] an acquittal" by proceeding on a not-guilty agreed statement of facts that does not present sufficient evidence to support the crimes charged); Barnes v. State*, 31

Md.App. 25, 28, 354 A.2d 499, 501 (1976) (stating that, *even in a case based on an agreed statement of facts, "an accused must be acquitted if the evidence is not legally sufficient to sustain his conviction"*). We renew that admonition today. If *a prosecutor* proceeds on a not-guilty agreed statement of facts, he or she *should take care* to assure *that the statement contains evidence to support each element of the crime* or crimes charged, *or else acquittal necessarily will follow.*

(Emphasis supplied). See also *Bruno v. State,* 332 Md. 673, 684, 632 A.2d 1192 (1993); *Barnes v. State,* 31 Md.App. 25, 354 A.2d 499 (1976).

We hold that the State's evidence as recited in the agreed statement of facts was not legally sufficient to establish that the weapon in this case was concealed. The conviction must be reversed.

**JUDGMENT REVERSED; COSTS TO BE PAID BY MAYOR AND CITY COUNCIL OF BALTIMORE.**