661 A.2d 747

## Dwight Ralph SMALLWOOD

v.

## STATE of Maryland.

## No. 1678, Sept. Term, 1994.

Court of Special Appeals of Maryland.

July 13, 1995.

Julia Doyle Bernhardt, Asst. Public Defender (Stephen E. Harris, Public Defender, on the brief), Baltimore, for appellant.

Kimberly Smith Ward, Asst. Atty. Gen. (J. Joseph Curran, Jr., Atty. Gen., Baltimore, and Toni E. Clark, State's Atty. for Prince George's County, Upper Marlboro, on the brief), for appellee.

Argued before MOYLAN, BISHOP, and BLOOM, JJ.

BISHOP, Judge.

The State filed a twenty-three count indictment in the Circuit Court for Prince George's County against appellant, Dwight Ralph Smallwood. Appellant pleaded guilty to charges of attempted first degree rape and robbery with a deadly weapon. Based on an agreed statement of facts, the

trial court tried appellant on charges of assault with intent to murder, attempted second degree murder, and reckless endangerment. After convicting appellant on those charges, the trial court imposed concurrent sentences of life imprisonment for attempted first degree rape, twenty years for robbery with a deadly weapon, thirty years for assault with intent to murder, thirty years for attempted second degree murder, and five years for reckless endangerment. Appellant was also charged with and convicted of rape and robbery with a deadly weapon in two other cases, neither of which are the subject of this appeal.

## Issue

Appellant raises the following issue: Whether the evidence and the court's factual findings sufficiently support appellant's convictions of assault with intent to murder and attempted second degree murder.

## Statement of Facts

The agreed-upon statement of facts related by the State to the trial court reveals that, in July of 1991, appellant was incarcerated at the Prince George's County Detention Center, where he voluntarily agreed to be tested for the presence of the Human Immunodeficiency Virus ("HIV"). On August 29, 1991, appellant was diagnosed as being infected with HIV, the virus that causes Acquired Immune Deficiency Syndrome ("AIDS"). According to the medical records of the Prince George's County Detention Center, appellant knew that he was infected with HIV as early as September 25, 1991. Appellant told Dr. Ivan W. Laurich, a psychiatrist at the detention center, that he would not have sexual relations without informing his partners of his "HIV positive" status.

According to the State, in February of 1992, Marianne Liburdi, a licensed social worker, informed appellant of the necessity to practice "safe sex" in order to avoid transmitting his disease to his sexual partners. In July of 1993, appellant underwent HIV-related medical treatment at Children's Hospital, where he stated to medical personnel that he had one

sexual partner and that he always used condoms during sex. Appellant was retested for HIV in February and March of 1994; in both instances, appellant tested positive for HIV.

On September 28, 1993, appellant and an accomplice approached a woman exiting her car, ordered her, at gunpoint, to drive them to an automated teller machine, and forced her to withdraw $300. Although appellant was informed of the necessary precautions to avoid transmitting HIV to his sexual partners, appellant attempted to rape the woman after robbing her. According to the agreed-upon statement of facts, appellant "inserted his penis into [the woman's] vagina, causing slight penetration [and] did not use a condom during the act." Appellant threatened to shoot the woman if she reported the incident.

At the conclusion of the State's statement of facts, appellant declined to present evidence and moved for judgment of acquittal on the charges of assault with intent to murder, attempted second degree murder, and reckless endangerment. The trial court denied appellant's motion and stated that, before going any further, it was necessary for the court "to make a clear record for all concerned." Essentially, the trial court adopted the agreed-upon statement of facts as its factual findings and concluded that appellant was guilty of attempted second degree murder, assault with intent to murder, and reckless endangerment.

### Discussion

Appellant seeks reversal of his convictions for assault with intent to murder and attempted second degree murder, arguing that one cannot be convicted of those crimes simply because one knowingly engages in sexual behavior that places his partner at risk of being infected with HIV. According to appellant, the evidence adduced was insufficient to support the trial court's verdict.

In reviewing the sufficiency of the evidence to support a criminal conviction, the standard to be applied is "whether the record evidence could reasonably support a finding of

guilt beyond a reasonable doubt." The appropriate inquiry then is not whether we believe that the evidence at trial established guilt beyond a reasonable doubt; "[i]nstead, the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Moreover, when evaluating the sufficiency of the evidence in a non-jury trial, the judgment of the trial court will not be set aside on the evidence unless clearly erroneous, giving due regard to the trial court's opportunity to judge the credibility of the witnesses.

*State v. Raines,* 326 Md. 582, 588–89, 606 A.2d 265 (1992) (citations omitted). Within that standard of review, we turn to the issues presented in the case *sub judice.*

## I.

Regarding appellant's conviction for attempted second degree murder, the trial court ruled:

I think it is clear from the record that [appellant] knew that he had the HIV virus, that he was counseled by various doctors and medical personnel as to that fact, as to how it is transmitted, and that [appellant] stated on several occasions he would only engage in "safe sex." [Appellant] knew that, at least all of that, before he raped the victims. And he even admitted to staff at Children's Hospital as to having sex but was using a condom every time.

\*     \*     \*     \*     \*     \*

It is my belief and finding that, based on [appellant's] knowledge of his disease, his counseling with regards to that, that I can infer malicious intent, that is an intent to commit murder, and we so find, would so find.

I believe his requisite intent to kill can be found from inferring from [appellant's] knowledge as to his HIV positive status, his knowledge of the transmission of the disease. I believe that he also had sufficient time to consider the consequences of his act.

Accordingly, Madam Clerk, the Court would find him guilty ... Count I [attempted second degree murder].

■ "The crime of attempt consists of a specific intent to commit a particular offense coupled with some overt act in furtherance of the intent that goes beyond mere preparation." *State v. Earp,* 319 Md. 156, 162, 571 A.2d 1227 (1990). "[T]he required specific intent in the crime of attempted murder is a specific intent to murder." *Id.* at 163, 571 A.2d 1227. The Court of Appeals of Maryland defines "specific intent to murder" as "the specific intent to kill under circumstances that would not legally justify or excuse the killing or mitigate it to manslaughter." *Id.* at 167, 571 A.2d 1227. The trier of fact may infer the existence of the requisite intent to kill from the surrounding circumstances. For example, in *State v. Jenkins,* 307 Md. 501, 514, 515 A.2d 465 (1986), the Court of Appeals held that an intent to kill may, under proper circumstances, be inferred from the use of a deadly weapon directed at a vital part of the human body.

Whether an intent to kill may, under proper circumstances, be inferred from attempted first degree rape which is likely to result in the transmission of HIV to the victim, and whether, under the proper circumstances, attempted first degree rape constitutes an overt act necessary to support a conviction for the crime of attempted murder present issues of first impression in Maryland. We, therefore, look to other jurisdictions for guidance.

In *Weeks v. State,* 834 S.W.2d 559 (Tex.Ct.App.1992) the Court of Appeals of Texas held that the evidence was sufficient to support the appellant's conviction for attempted murder where appellant, who was HIV positive, spit in the face of a prison guard. According to the Court,

[t]he State was required to prove that appellant's intent, when he spit on the officer, was to cause the officer's death; that appellant was infected with HIV at the time he spit on the officer; and that this act was more than mere preparation which tended, but failed to effect the commission of the offense intended, which was the officer's death.

*Id.* at 561–62. Because there was sufficient evidence to demonstrate that appellant believed he could kill the officer by spitting his HIV-infected saliva on him, and because the medical testimony indicated that it was possible to transmit HIV through saliva, the Court held:

It is undisputed that appellant spit twice on the officer and that appellant was infected with HIV at the time. The record reflects that appellant believed he could kill the complainant by spitting his HIV infected saliva on him. The issue, then, before this Court is whether sufficient evidence, when viewed in the light most favorable to the verdict, was presented to the jury showing that appellant could have transmitted HIV by spitting on the officer.

\*   \*   \*   \*   \*   \*

The jury as trier of fact, was the sole judge of the credibility of the witnesses and the weight to be given to their testimony. The jury chose to believe the witnesses who testified that HIV could be transmitted through saliva. If a rational trier of fact could have reached that result based upon the evidence in this particular case, it would be improper for this court to set aside the jury's verdict. While the evidence was highly controverted, there is sufficient evidence in the record, when considered in the light most favorable to the verdict, that appellant could have transmitted HIV by spitting.

*Id.* at 562, 565.

In *State v. Smith,* 262 N.J.Super. 487, 621 A.2d 493 (App. Div.1993), the Superior Court of New Jersey, Appellate Division, reviewed the propriety of a defendant-appellant's conviction for attempted murder, aggravated assault, and terroristic threats. In *Smith,* the defendant-appellant, a county jail inmate, knew he had HIV, and, prior to biting and puncturing the skin of a corrections officer's hand, repeatedly threatened that he would kill the corrections officers by spitting at them or biting them. The Superior Court "applied the elements of [New Jersey's] attempted murder statute as [it] would in a case involving a more traditional criminal methodology[,]" and

concluded that "the attempted murder verdict was supported by proof, which the jury reasonably could accept, that the defendant subjectively believed that his conduct could succeed in causing the officer's death, regardless of whether his belief was objectively valid." *Id.* 621 A.2d at 496. The Court stated that the defendant's violent threats, before, during, and after biting the corrections officer, "all justified an inference that he bore the requisite criminal state of mind under *N.J.S.A.* 2C:5–1(a)(2)[,]" and that "there was ample evidence from which the jury could have concluded that defendant did all that he believed was necessary to infect [the corrections officer]." *Id.* 621 A.2d at 505.

Similarly, in *State v. Haines,* 545 N.E.2d 834, 839 (Ind.Ct. App.1989), the Court of Appeals of Indiana reviewed whether an HIV-infected appellee could be convicted of attempted murder. In *Haines,* after a failed suicide attempt, the appellee scratched, bit, and spit at emergency technicians and police officers who came to his aid, and threatened to give them the AIDS virus. During his scuffle with one of the police officers, the appellee struck the officer in the face with a blood-soaked wig, causing blood to splatter onto the officer's eyes, mouth, and skin. The appellee was charged with three counts of attempted murder.

At trial, the appellee's homosexual lover recalled that doctors had informed the appellee that he had the AIDS virus, and that the appellee knew that the AIDS virus was fatal. Additional testimony revealed that, on one occasion when the appellee was admitted to the hospital, he warned the medical staff not to touch him because he was infected with the AIDS virus. Medical testimony adduced at trial revealed that the officer was definitely exposed to HIV, that exposure of infected blood to the eyes and the mouth is dangerous, and that it is easy for the virus to enter the blood stream through cuts on the skin.

The trial court in *Haines* determined that the State failed to meet its burden of proof and, therefore, granted the appellee's motion for judgment on the counts of attempted murder. The

Court of Appeals, however, reversed the trial court's judgment, and held:

> [f]rom the evidence in the record before us we can only conclude that [the appellee] had knowledge of his disease and that he unrelentingly and unequivocally sought to kill the persons helping him by infecting them with AIDS, and that he took a substantial step towards killing them by his conduct believing that he could do so, all of which was more than a mere tenuous, theoretical, or speculative "chance" of transmitting the disease. From all of the evidence before the jury it could have concluded beyond a reasonable doubt that [the appellant] took a substantial step toward the commission of murder.
>
> Thus the trial court improperly granted [the appellee's] motion for judgment on the evidence....

*Id.* at 841.

In *Commonwealth v. Brown*, 413 Pa.Super. 421, 605 A.2d 429 (1992), the Superior Court of Pennsylvania held that there was sufficient evidence to support the fact finder's conclusion that the appellant intended to inflict serious bodily injury upon a corrections officer. In *Brown*, the appellant, who was infected with HIV, threw his fecal matter in a corrections officer's face, because, according to the appellant, the corrections officer had been tampering with his mail. Because the evidence revealed that the appellant had been counseled by both a physician and a nurse concerning the dangers of AIDS and the transmission of HIV through bodily fluids, the Court determined that there was sufficient evidence to support appellant's conviction for aggravated assault. *Id.* 605 A.2d at 431.

In *State v. Stark*, 66 Wash.App. 423, 832 P.2d 109 (1992), the appellant challenged the sufficiency of the evidence supporting his conviction for assault in the second degree. The Court recognized that the appellant knew that he was HIV positive, that he had been counselled to use "safe sex" methods, and that, when confronted with his sexual practices, appellant stated that he did not care. Viewing that evidence in a light

**10**

most favorable to the prosecution, the Washington Court of Appeals upheld the appellant's conviction.

■ In the case *sub judice*, the trial court found that appellant's insertion of his penis into his victim's vagina, with slight penetration, constituted an overt act in furtherance of the intent that went beyond mere preparation. Appellant concedes that, by attempting to rape his victim, he "did something that went 'past that mere tenuous, theoretical or specter of chance of transmitting the disease.'" That HIV can be transmitted through sexual contact is undisputed. Therefore, in light of the holdings in other jurisdictions, we conclude that, under the circumstances of the case *sub judice*, attempted first degree rape satisfies "the furthering overt act, beyond mere preparation" prong of the crime of attempted second degree murder.

■ Although appellant concedes that his attempt to rape his victim constituted an overt act necessary to support a conviction for attempted second degree murder, appellant argues that the evidence fails to support the trial court's finding that he possessed the requisite specific intent to murder. The record, however, belies appellant's assertion.

When reviewing the sufficiency of the evidence, "we look at the evidence of guilt under the microscope of Maryland Rule [8–131] which permits us to set aside the verdict of the court if it was clearly erroneous...." *Murray v. State*, 35 Md.App. 612, 614, 371 A.2d 719 (1977). "If the record shows any evidence or proper inferences from the evidence upon which the trial court could fairly find the appellant guilty, beyond a reasonable doubt, then the verdict should not be disturbed." *Howell v. State*, 233 Md. 145, 146–47, 195 A.2d 592 (1963). "Moreover, when evaluating the sufficiency of the evidence in a non-jury trial, the judgment of the trial court will not be set aside on the evidence unless clearly erroneous, giving due regard to the trial court's opportunity to judge the credibility of the witnesses." *State v. Raines*, 326 Md. 582, 589, 606 A.2d 265 (1992). Appellant asserts that the trial court was required to give him the benefit of the conclusion that would mitigate

his guilt. *West v. State,* 312 Md. 197, 210, 539 A.2d 231 (1988). Stated differently, appellant maintains that the trial court's verdict was clearly erroneous because, "when there is a reasonable doubt as to which of two or more crimes [an] accused has committed or where there is a reasonable doubt in which of several degrees a defendant is guilty, [the defendant] can be convicted only of the least serious crime or the lowest degree." *Id.*

In the case *sub judice,* the trial proceeded based upon an agreed statement of facts. We stated in *Barnes v. State,* 31 Md.App. 25, 354 A.2d 499 (1976), that

[u]nder an agreed statement of facts both State and the defense agree as to the ultimate facts. Then the facts are not in dispute, and there can be, by definition, no factual conflict. The trier of fact is not called upon to determine the facts as the agreement is to the truth of the ultimate facts themselves. There is no fact-finding function left to perform. To render judgment, the court simply applies the law to the facts agreed upon.

*Id.* at 35, 354 A.2d 499. In *Barnes,* when defense counsel moved for judgment of acquittal, the parties had established the facts by agreement; *i.e.,* the facts were undisputed. "There was no conflicting evidence which required resolution to enable the court to determine the facts. All that remained to be done was for the court to apply the law to the undisputed facts of the case." *Id.* at 30, 354 A.2d 499. At this point in the trial, however, the court and defense counsel engaged in a discussion concerning the requisite intent under the shoplifting law. During that discussion, defense counsel proffered evidence that directly conflicted with the evidence received by way of stipulation. The court implicitly resolved the disputed facts in favor of the State and rendered a verdict of guilty. This Court reversed that verdict, holding:

There was evidence, which, if found credible, was sufficient in law to support a finding that Barnes concealed the merchandise, and there was evidence, which, if found credible, was sufficient in law to support a finding that Barnes

did not conceal the merchandise. As is patent from the verdict, the court resolved this conflict by believing the State's witness, and accepted that version of what occurred, finding as a fact that Barnes concealed the merchandise. It necessarily follows, that in order to find beyond a reasonable doubt that the offense was committed and that Barnes committed it, the court did not believe Barnes, and rejected her version that she did not conceal the merchandise. Ordinarily, this would be perfectly proper. As we have indicated, it is the function of the trier of fact in such a situation to resolve evidentiary conflicts. In performing this function, it may believe one witness and disbelieve another, for the credibility of the witnesses and the weight to be given the evidence are matters for it. The rub here is that, in the circumstances, there was no proper basis on which the court could resolve the conflict. Certainly, neither the State's evidence nor the defense's evidence was inherently incredible. Neither witness from whom the evidence emanated appeared before the court; the court was merely told what the witnesses would say if they testified. There were simply no factors apparent from the record before us which would enable the court to judge the credibility of either witness, or the reliability of the evidence offered through them. The court expressed no reasons for the finding inherent in its verdict and gave no clue as to why it concluded, in the face of the conflicting evidence, that Barnes concealed the merchandise. As we see it, in the circumstances, the only way the court could have resolved the conflict in the evidence, and made a factual finding that the merchandise was concealed, was by arbitrary choice.

*Id.* at 34, 354 A.2d 499.

In *West v. State*, "the evidence presented [was] of a kind that [had] in prior case law supported either of two inferences." *West*, 312 Md. at 211, 539 A.2d 231. There, the evidence—possession of a stolen money order—supported either the inference that the appellant was the thief or the inference that the appellant was given the stolen money order by the actual thief, who wanted it converted to cash. In

*West,* because there was evidence that weighed against the inference that the appellant was the thief, the Court concluded that the appellant was entitled to the inference that he was merely the receiver of the stolen money order. In rendering its decision, the Court of Appeals relied on its previous holding in *Jordan v. State,* 219 Md. 36, 148 A.2d 292 (1959), which cited *People v. Galbo,* 218 N.Y. 283, 112 N.E. 1041 (1916):

> [T]he facts must shape the inference. [For example,] [i]s the guilty possessor the thief, or is he a receiver of stolen goods? Judges have said that, if nothing more is shown, we may take him to be the thief. But as soon as evidence is offered that the theft was committed by some one else, the inference changes, and he becomes a receiver of stolen goods.
>
> . . . .
>
> "The problem is a hard one. To solve it we must steadily bear in mind that the inference of guilt to be draw from possession is never one of law. It is an inference of fact. Other facts may neutralize it, or repel it, or render it so remote or tenuous or uncertain that in a given case we should reject it. . . . *If the circumstances make one inference just as reasonable as the other, we must give the defendant the benefit of the conclusion that would mitigate his guilt.*"

*West,* 312 Md. at 211, 539 A.2d 231 (quoting *People v. Galbo,* 112 N.E. at 1044) (alterations and emphasis added) (citations omitted).

To render a judgment in the case *sub judice,* the trial court simply had to apply the law to the agreed upon facts. Unlike the *West* and *Jordan* cases, the State and the defense in the instant case provided the trial court with a statement of undisputed facts upon which the court could determine appellant's guilt or innocence. Accordingly, the trial court did not need to weigh the credibility of the evidence to determine the ultimate facts of the case. Unlike the circumstances in *West,* the circumstances in the case *sub judice* did not require the trial court to apply the principles espoused in *Jordan* and

*Galbo.* In *West* there was evidence that weighed against the more serious offense of robbery; here, the agreed statement of facts indicated that appellant, an HIV infected individual, attempted to rape his victim without using a condom and with the full knowledge of the consequences of his actions.

The trial court made clear that "[a]ll of the circumstances in the case would support an inference *beyond a reasonable doubt* that a murderous intent was proved." (Emphasis added). In *State v. Raines,* the Court of Appeals stated that "the determination of an accused's intention is, in the first instance, for the trial judge, when sitting without a jury, and this determination will not be disturbed on appeal unless clearly erroneous." *Raines,* 326 Md. at 590, 606 A.2d 265. The Court in *Raines,* explained that "intent must be determined by a consideration of the accused's acts, conduct, and words," and that, under the proper circumstances, "an intent to kill may be inferred from the use of a deadly weapon directed at a vital part of the human body." *Id.* at 591, 606 A.2d 265.

Similarly, in *Ford v. State,* 330 Md. 682, 625 A.2d 984 (1993), the Court of Appeals held that, although the appellant asserted that he did not intend to hurt anyone, "[a] rational jury could have found that, when [the appellant] threw rocks at the windshields of vehicles travelling at highway speed, he intended to permanently disable any and all occupants of the vehicles." *Id.* at 704, 625 A.2d 984. The Court emphasized that "[i]t is a reasonable inference that a 'natural and probable consequence' of throwing a large rock through the windshield of a fast moving vehicle is permanent injury of various forms to the vehicle's occupants." *Id.* The situation in the case *sub judice* is analogous; the trial court reasonably inferred that a natural and probable consequence of an HIV-infected assailant attempting to rape his victim, without using a condom, would be the transmission of the deadly AIDS virus.

In the case *sub judice,* the trial court ruled that malice and "the requisite intent to kill" could be inferred from appellant's knowledge that he was infected with HIV, his knowledge that HIV, a fatal disease, could be transmitted through sexual

intercourse, and his assurance to doctors that he always used a condom and never engaged in "unprotected" sexual intercourse. Although he was aware of the consequences of "unprotected" sexual intercourse, appellant neglected to use a condom during the attempted rape. Appellant proffered no evidence suggesting that he did not understand that HIV could be transmitted through sexual contact. The agreed statement of facts included no facts that weighed against the offense of attempted second degree murder. "It is a reasonable inference that 'one intends the natural and probable consequences of his act.'" *Ford v. State*, 330 Md. 682, 704, 625 A.2d 984 (1993). "Relying upon that inference, the trial judge could rationally find, beyond a reasonable doubt," that appellant was guilty of attempted second degree murder. *Raines*, 326 Md. at 593, 606 A.2d 265. "Although a different trier of fact may have viewed the evidence as establishing [merely the crime of reckless endangerment], the trial court's decision was not clearly erroneous." *Id.* Accordingly, we affirm appellant's conviction for attempted second degree murder.

## II.

Appellant also challenges his conviction for assault with intent to murder. It is generally recognized that, to support a charge of assault with intent to murder, there must be proof of both an assault and an *intention to murder*. *Webb v. State*, 201 Md. 158, 161, 93 A.2d 80 (1952) (emphasis added). Because of the reasons stated in section I., *supra*, we affirm appellant's conviction for assault with intent to murder.

## Conclusion

In conclusion, we note that neither party raises the issue of whether appellant's conviction for attempted second degree murder should be merged with his conviction for assault with intent to murder. In *Williams v. State*, 323 Md. 312, 593 A.2d 671 (1991), the Court of Appeals of Maryland recognized that "cases elsewhere consistently take the position that where charges of attempted homicide (regardless of degree) and assault with intent to murder ... are based on

the same conduct, convictions and sentences on both charges will not be sustained." *Id.* at 323, 593 A.2d 671. The *Williams* court held that

> the offenses of attempted murder and assault with intent to murder take the place of murder when the defendant intends to kill the victim, acts in furtherance of that intent, but the victim survives. For sentencing purposes, it would be illogical to treat the various homicide offenses as a single offense when the victim dies but not to treat the substitutional offenses of attempted murder and assault with intent to murder as a single offense when the victim lives.

Accordingly, we hold that, for sentencing purposes in the case *sub judice,* appellant's conviction for assault with intent to murder should merge into appellant's conviction for attempted second degree murder.

**JUDGMENT AFFIRMED. SENTENCE VACATED, CASE REMANDED TO THE CIRCUIT COURT FOR PRINCE GEORGE'S COUNTY FOR RESENTENCING IN ACCORDANCE WITH THIS OPINION. COSTS TO BE PAID BY APPELLANT.**

BLOOM, Judge, dissenting.

Great cases, like hard cases, make bad law. For great cases are called great, not by reason of their real importance in shaping the law of the future, but because of some accident of immediate overwhelming interest which appeals to the feelings and distorts the judgement.[1]

By any standard of reason or logic, this is not a great case, and it should certainly not be deemed a hard case. Yet in one respect it does seem to fit Justice Holmes's definition of a great case: appellant's admittedly atrocious conduct undoubtedly appeals to the feelings and, I believe, has distorted the judgment of my brethren.

---

1. Holmes, J., *Northern Securities Co. v. United States,* 193 U.S. 197, 401–02, 24 S.Ct. 436, 468, 48 L.Ed. 679, 726 (1904).

The majority opinion points out that this case was tried on an agreed statement of facts, and it quotes from Chief Judge Orth's opinion in *Barnes v. State,* 31 Md.App. 25, 35, 354 A.2d 499 (1976):

[U]nder an agreed statement of facts both State and the defense agree as to the ultimate facts. Then the facts are not in dispute, and there can be, by definition, no factual conflict. The trier of facts is not called upon to determine the facts as the agreement is to the truth of the ultimate facts themselves. There is no fact finding function left to perform. To render judgment, the court simply applies the law to the facts agreed upon.

Unfortunately, what Chief Judge Orth wrote for this Court in *Barnes* is not completely accurate. The parties have agreed on certain facts, and as to those facts there is no dispute. But I daresay that no agreed statement of facts is ever complete; the trial judge has to flesh out the agreed facts by drawing inferences as to other material facts that the parties have not stipulated. In this case, there is one fact, absolutely essential to guilt or innocence of the crimes of attempted murder and assault with intent to murder, that needs to be found by the trier of fact: appellant's intent or state of mind, which, according to Lord Bowen's famous aphorism, "is as much a fact as the state of his digestion." [2]

In this case, the trial judge inferred from the facts agreed upon that when appellant raped or attempted to rape the women he and his accomplice had abducted and robbed at gunpoint, he intended to kill them by infecting them with the deadly disease that he knew he could transmit by sexual intercourse without using a condom.

I agree with the majority opinion that an intent to kill the victims can be inferred from the agreed facts. Appellant was HIV positive and knew it, and he also knew that the disease could be transmitted by "unsafe sex." He was, therefore, aware that in raping his victims he might infect them with a

---

2. *Edgington v. Fitzmaurice,* 29 Ch.Div. 459, 483 (1885).

deadly and incurable disease. It is a well established principle of law that, in the absence of evidence to the contrary, one may be inferred to have intended that which is the natural consequences of his acts. *See Davis v. State,* 204 Md. 44, 51, 102 A.2d 816 (1954); *Chisley v. State,* 202 Md. 87, 105, 95 A.2d 577 (1953), and cases therein cited.[3]

The difficulty is that from those same agreed facts an inference may also be drawn by a somewhat different state of mind: an intent to rape each of the victims, with a reckless disregard for the risk of infecting them with the deadly virus he carried. That is not the same as an intent to kill; it is the wanton, reckless indifference that signifies a depraved heart and that justified appellant's conviction for reckless endangerment. It is not the state of mind required for a conviction of either attempted murder or assault with intent to murder. Those are specific intent crimes, the specific intent required being an intent to murder. *State v. Earp,* 319 Md. 156, 162, 571 A.2d 1227 (1990) (attempted murder); *Webb v. State,* 201 Md. 158, 161, 93 A.2d 80 (1952) (assault with intent to murder). The specific intent to murder is the specific intent to kill under circumstances that would not legally justify or excuse the killing or mitigate it to manslaughter.

The question then arises as to whether one may properly be convicted of a crime requiring a specific intent upon evidence from which the trier of fact can infer either that specific intent or a general malevolence. The test to be applied in determin-

---

**3.** In *Davis*, the Court said, "The deliberate selection and use of a deadly weapon directed at a vital part of the body is a circumstance which indicates a desire to kill, since in the absence of evidence to the contrary, the law *presumes* that one intends the natural and probable consequences of his act." (Emphasis added.) In *Sandstrom v. Montana,* 442 U.S. 510, 99 S.Ct. 2450, 61 L.Ed.2d 39 (1979), however, the Supreme Court held that a jury instruction that stated, "The law presumes that a person intends the ordinary consequences of his voluntary acts," deprived the defendant of his right to due process of law. "Presumption" thus gave way to "inference," which does not suggest either a "burden shifting presumption" that would violate *Mullaney v. Wilbur,* 421 U.S. 684, 686, 95 S.Ct. 1881, 1883, 44 L.Ed.2d 508 (1975), or a "conclusive presumption" in violation of *Morissette v. United States,* 342 U.S. 246, 72 S.Ct. 240, 96 L.Ed. 288 (1952).

ing the sufficiency of evidence to support a conviction is "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Wiggins v. State,* 324 Md. 551, 567, 597 A.2d 1359 (1991) (quoting *Jackson v. Virginia,* 443 U.S. 307, 318–19, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979)) (emphasis in original). "In this regard, under Maryland Rule 8–131(c), we defer to the factual findings of the trial judge in a non-jury case, unless they are clearly erroneous, giving due regard to the opportunity of the trial judge to observe the demeanor of the witnesses and to assess their credibility." *Id.* 324 Md. at 567, 597 A.2d 1359.

Of course, in this case, there were no witnesses and thus no opportunity for the judge to assess anyone's credibility. There was an agreed statement of facts from which conflicting inferences can be drawn. If the inference consistent with guilt, *i.e.,* the inference that appellant intended to kill his victims by infecting them with a deadly, incurable disease, were one whit, jot, tittle, or iota stronger than the alternative inference that appellant's intent or state of mind was one of reckless indifference for the lives of his rape victims, I would have no hesitancy in agreeing with my brethren that the convictions must be affirmed.

A reasonable trier of fact, either a judge or jury, may reasonably choose to draw an inference consistent with the guilt of the accused if it is stronger, *i.e.,* more logical and more reasonable, than the alternative inference consistent with innocence. In this case, however, the inference of murderous intent is *not* a stronger, more reasonable inference than the alternative inference of depraved heart reckless indifference. Indeed, the inference of intent to murder by infecting his victims with a deadly incurable disease is, I suggest, far weaker and less reasonable than the alternative. Appellant was armed with a gun, which he used to accomplish both the robbery and the rape of each of his victims by threatening to shoot them. There was, undoubtedly, an intent to rob and an intent to rape. But is it more or less likely that one infected

with a deadly, incurable disease *and* armed with a gun, intending to murder as well as to rape and to rob his victim, would choose to murder her by the transmission of the disease, which is far from a sure and certain method of killing someone, instead of shooting the victim in the head or the heart? Even the use of the gun as a bludgeon would be a more logical, sure, and certain method of killing a rape victim than the bare possibility of transmitting the virus, which may or may not develop into full-blown AIDS.

The cases from Texas, New Jersey, Pennsylvania, Indiana, and Washington that are cited in the majority opinion are of no assistance in resolving the issue presented in this case. None of them involved conflicting inferences as to the intent of the defendant. Indeed, in *Weeks v. State,* 834 S.W.2d 559 (Tex.Ct.App.1992), and *State v. Smith,* 262 N.J.Super. 487, 621 A.2d 493 (App.Div.1993), the matter of the defendant's state of mind was not an issue on appeal—the intent to kill was conceded; the issue in *Weeks* was whether one infected with the AIDS virus could kill someone by spitting on him, and the issue in *Smith* was whether one could be convicted of attempted murder if the evidence is unclear as to whether it is possible for someone with the virus to kill another person by biting him. In the other cases, there was either clear evidence of the requisite intent to kill or injure or no reasonable inference could be drawn of a contrary intent. In this case, from the agreed statement of facts, two different, mutually exclusive states of mind are inferable: the stronger, more reasonable inference is one of reckless indifference; the weaker, less reasonable inference is of a specific intent to kill.

I do not believe that a reasonable trier of fact can reasonably draw the weaker inference and thus be persuaded of appellant's guilt beyond a reasonable doubt.

*West v. State,* 312 Md. 197, 539 A.2d 231 (1988), involved the inferences that may be drawn from the defendant's possession of recently stolen property. Someone had snatched the victim's purse. The defendant, accompanied by a youth, later tried to cash a money order that had been in the victim's

purse when it was stolen. The victim never saw the thief's face and thus could not identify the defendant as the man who had stolen her purse. The victim's son said that he saw the features of the purse snatcher, but he was unable to identify the defendant as the thief. The issue before the Court was the sufficiency of the evidence to justify the defendant's conviction for theft of the purse, which had contained property (including the money order) valued at more than $300.00. Citing *Jordan v. State*, 219 Md. 36, 148 A.2d 292 (1959), which, in turn, had relied upon Judge Cardozo's opinion in *People v. Galbo*, 218 N.Y. 283, 112 N.E. 1041 (1916), and earlier cases that had dealt with the inferences that may be drawn from the possession of recently stolen property, the Court noted that the defendant's possession of the stolen money order supported two inferences: that the defendant was the thief, and therefore the purse snatcher, or that someone else—perhaps the youth who accompanied the defendant into the drugstore where the defendant attempted to cash the money order—was the thief and the defendant was a receiver, to whom the youth had entrusted the money order in an effort to convert it into cash.

As Judge Cardozo pointed out in *Galbo*, if nothing *more* is shown, it is proper to draw the inference that the person in possession of recently stolen property is the thief, but as soon as evidence is offered that the theft was committed by someone else, the inference changes, and he becomes a receiver of stolen goods. The inference of guilt to be drawn from possession is one of fact, not of law.

> Other facts may neutralize it, or repel it, or render it so remote or tenuous or uncertain that in a given case we should reject it.... If the circumstances make one inference just as reasonable as the other, we must give the defendant the benefit of the conclusion that would mitigate his guilt.

112 N.E. at 1044 (citation omitted). Quoting and relying on that passage from *Galbo*, the Court of Appeals in *West*, upon finding that there was evidence weighing against the inference that the defendant was the thief (the failure of the victim's

son to identify the defendant as the purse snatcher and the presence of the youth with him when he attempted to cash the money order), held that the principles applied in *Jordan* and in *Galbo* required the conclusion that the defendant was a receiver, not the thief.

At first glance, the proposition that in the absence of any other evidence the court may find the possessor of recently stolen goods guilty of theft may appear to be inconsistent with the proposition that, if each of two inferences are equally reasonable, the defendant must be given the benefit of the conclusion that would mitigate his guilt. The two propositions may, however, be reconciled by recognizing that the inference that the possessor was the thief is a more reasonable inference than that he was merely a receiver. The latter requires an additional inference, not supported by any additional facts, that some unknown person stole the property and then delivered it to the defendant.

In this case, as pointed out above, there are facts that tend to make the inference of an intent to murder the victim weaker and less reasonable than the inference of a depraved, reckless indifference to the risk of the victim dying of AIDS. There is, of course, the fact that appellant was armed with a gun, which is a far more effective weapon than a penis for accomplishing the death of the victim. There is the fact that other specific intents, *i.e.*, the intent to rob and the intent to rape, were clearly present. It seems to be an unreasonable stretch of the imagination to infer a third specific intent—the intent to kill—occupying the mind of the robber/rapist while he committed the other offenses.

Accordingly, on the basis of the holdings of the Court of Appeals in *West* and *Jordan,* and the language of Judge Cardozo in *Galbo* that the Court of Appeals quoted and relied upon in *West* and *Jordan,* I believe that the trial court was clearly erroneous in drawing the weaker of two inferences as to appellant's state of mind in order to find that appellant entertained the express intent to kill the victim by infecting her with the AIDS virus. I do not believe that such a finding

can reasonably be made beyond a reasonable doubt from the agreed statement of facts upon which the case was submitted to the Court. I would reverse the convictions for attempted murder and assault with intent to murder.