7 A.3d 1074

**Robert Harvey BISHOP, Jr.**

v.

**STATE of Maryland.**

**No. 1, Sept. Term, 2010.**

Court of Appeals of Maryland.

Nov. 4, 2010.

**4**

Allison M. Sayers, Assistant Public Defender (Paul B. De-Wolfe, Public Defender, Baltimore), on brief, for petitioner.

Michelle W. Cole, Asst. Atty. Gen. (Douglas F. Gansler, Atty. Gen. of Maryland, Baltimore), on brief, for respondent.

Argued before BELL, C.J., HARRELL, BATTAGLIA, GREENE, MURPHY, ADKINS and BARBERA, JJ.

BATTAGLIA, J.

In this case, Robert Harvey Bishop, Jr., Petitioner, charged with two counts of sexual abuse of a minor and related offenses, and the State, Respondent, entered into an agreement entitled, "PLEA BARGAIN: EXPLANATION OF AND ACKNOWLEDGMENT OF RIGHTS * * * NOT GUILTY, AGREED STATEMENT OF FACTS PLEA." Thereafter, during a judicial proceeding, the State presented Bishop's confession, which was later suppressed by the Court of Special Appeals on Sixth Amendment grounds, as well as a recording of telephone conversations, in which Bishop was a party, that was never admitted into evidence, about which Bishop's counsel expressed pause, without any attempt at clarification by the State, in addition to a proffer of the two child victims' testimony. From the decision of the Court of Special Appeals, affirming his conviction on the basis of harmless error, Bishop filed a Petition for Writ of Certiorari in this

Court, which we granted, *Bishop v. State,* 411 Md. 740, 985 A.2d 538 (2009), in which he presented the following questions:

1. Where the parties have proceeded by way of an agreed statement of facts, may an appellate court rely on evidence that was proffered by the State but disputed by the defense in determining that the improper denial of a motion to suppress is harmless error?

2. Under the circumstances of this case, did the intermediate appellate court err in holding that the improper denial of the motion to suppress Petitioner's confession to the police is harmless error?

In response to these questions, which we will address as one, we shall vacate the judgment of the Court of Special Appeals and remand to the Circuit Court for Cecil County for further proceedings, because harmless error analysis cannot be applied to the suppressed confession due to the murky record in this case, based upon the muddled plea agreement and proceedings themselves, coupled with an apparent dispute regarding the contents of telephone conversations, the recordings or transcripts of which were never admitted into evidence.

In July 2007, Bishop, accompanied by counsel, appeared before a judge in the Circuit Court for Cecil County. An Assistant State's Attorney called the case "for the purpose of plea at this time," and the following ensued:

[STATE'S ATTORNEY]: The defendant is going to enter a not guilty on a statement of facts to Count 1 and Count 3, which are both child sexual abuse counts. The state will nolle pros the other two counts in return for the plea.

We will be requesting a PSI and a new sentencing date. At the time of sentencing the state would recommend that twenty-five years be imposed; that ten be suspended; the defendant to serve fifteen years; five years supervised probation upon release.

The counts, of course, are mandatory registration counts, and I believe that is a fair and accurate statement.

[DEFENSE COUNSEL]: That's correct, your Honor, that's fair and accurate. For the record ... we had a motions hearing on the 25th of May; and for purposes—for any appellate purposes we are agreeing to go forward with the not guilty statement of facts, based on the decisions made at the motions hearing, or the denial of our motion for suppression at that motions hearing, your Honor.

Following the presentation of the plea agreement, the following exchange occurred between the clerk and the judge:

[CLERK OF THE COURT]: All right. Mr. Bishop, if you would stand, please.

THE COURT: He doesn't need to be sworn, madam clerk, for a not guilty plea. '

The judge then inquired into Bishop's decision to waive his right to a jury trial:

THE COURT: Before we can proceed, Mr. Bishop, I have to ask you a number of questions, make a number of statements, to make sure in my mind that you understand what you are doing, you are doing it voluntarily, with full understanding of possible consequences.

First of all, you are here because you have been indicted by the grand jury here in Cecil County. Because of the nature of the charges returned and the possible penalties, you are entitled to a trial by jury. Now obviously if you are attempting to proceed on a not guilty plea agreed statement of facts there will be no trial by jury; but you still have to waive that right affirmatively on the record in open court.

Are you waiving your right to a trial by jury?

[BISHOP]: Yes, your Honor.

THE COURT: This form that you and your attorney have filled out, do you have any questions about that form at all?

[BISHOP]: No, your Honor.

THE COURT: It explains to you in writing the rights that you are waiving by not having a trial by jury. Do you have any questions about those rights at all?

[BISHOP]: No, your Honor.

The form referenced, which was signed by Bishop and his counsel, provided, in pertinent part:

PLEA BARGAIN: EXPLANATION OF AND AC-KNOWLEDGMENT OF RIGHTS NOT GUILTY, AGREED STATEMENT OF FACTS PLEA FUNCTION-AL EQUIVALENT TO A GUILTY PLEA—NO DIRECT APPEAL RIGHT (MD. RULE 4–242(c)) [1]

Before the Court can accept your proceeding by way of a not guilty plea on an agreed statement of facts to one or more offenses to which you will no doubt be found guilty, you must answer some questions because the Court wants to make sure that you know what you are doing, you know what your rights are and you understand those rights, and that you are proceeding by way of an agreed statement of facts voluntarily.

1. My name is [Robert Harvey Bishop].

2. I am [36] years of age.

3. The farthest I went in school was [high school grad. & tech. school].

4. I [can] read and write.

5. I am not presently under the influence of alcohol, drugs, narcotics, other pills or suffering from withdrawal symptoms from the use of them.

6. Have you ever been under the care of a psychiatrist or a patient in a mental hospital or institution? [Yes].

7. Is there anything presently wrong with you? [No].

---

1. Rule 4–242(c) provides, in pertinent part:

(c) **Plea of guilty.** The court may not accept a plea of guilty until after an examination of the defendant on the record in open court conducted by the court, the State's Attorney, the attorney for the defendant, or any combination thereof, the court determines and announces on the record that (1) the defendant is pleading voluntarily, with understanding of the nature of the charge and the consequences of the plea; and (2) there is a factual basis for the plea. In addition, before accepting the plea, the court shall comply with section (e) of this Rule. The court may accept the plea of guilty even though the defendant does not admit guilt. Upon refusal to accept a plea of guilty, the court shall enter a plea of not guilty.

8. I have discussed the matter of proceeding by way of an agreed statement of facts with my attorney and my attorney has advised me of my rights. I am technically pleading not guilty to the offense(s) listed below in paragraph 9. However, my attorney, the prosecutor and I have agreed on a particular statement of facts concerning the offense(s) listed below in paragraph 9. Instead of my having a judge trial or a jury trial on the offense(s) listed below, the state or defense will present our agreed upon statement of facts to the court. That agreed upon statement of facts will be sufficient for the judge to find me guilty of the offense(s) listed below in paragraph 9. By proceeding in this manner I am still pleading not guilty and denying guilt. I am not admitting to any of the conduct necessary to establish guilt. However, this is the "functional equivalent" of a guilty plea in that I am giving up a number of rights that a person entering a straight guilty plea under Md. Rule 4–242(c) gives up. After consulting with my attorney, I am proceeding in this manner because of the plea agreement and because I believe this is the best course of action I can take in this case.

9. I am proceeding by way of a not guilty plea on an agreed statement of facts to the following: Offense # 1: [child sex abuse] and Offense # 2: [child sex abuse]. As to each offense, if I were to proceed to trial, the State would have to prove beyond a reasonable doubt to a jury, if I had a jury trial, or to a judge, if I had a Court trial, the following matters which are called "elements" of the offense: Offense # 1: _____ Offense # 2: _____. In this case the agreed statement of facts will be sufficient for the court to find me guilty of each offense listed above.

10. I understand that the offenses carry the following maximum penalties: Offense # 1: [25 yrs] [and] Offense # 2: [25 yrs].

11. No one made me a promise of a lesser sentence, probation, reward, immunity or anything else in order to get

me to proceed in this manner, other than the plea agreement, which is: [plea to above counts, dismiss remaining].

\*　　\*　　\*

12.　I understand that by proceeding in this manner I am giving up my absolute right to plead not guilty and have a trial. If I pled not guilty and had a trial, the State would have to prove each and every count against me by proof beyond a reasonable doubt and to a moral certainty. I understand that under the law I am presumed to be innocent, and if I pled not guilty and had a trial, the State would have this burden of proving each and every count against me.

13.　I understand that in order for the State to prove me guilty beyond a reasonable doubt, it would have to bring into open court witnesses who would have to testify in front of me, and my attorney and I would have the right to cross-examine them. I understand that by proceeding in this manner today, I am giving up that right to require the State to produce evidence and witnesses against me and the right to cross-examine those witnesses.

14.　I understand that by proceeding in this manner I am giving up my right to be tried by a judge or jury. A trial by a judge would be a trial by a judge of the circuit court. I could not be found guilty in a judge trial unless the judge decided beyond a reasonable doubt and to a moral certainty that I was guilty. A jury trial would be a trial by a group of twelve men and women from Cecil County chosen at random from the lists of registered voters, licensed drivers, and persons not licensed but who have state identification cards. My attorney and I would participate in the selection of that jury. The jurors would be young and old, black, white, male, female, educated, uneducated and their verdict would have to be unanimous that I was either not guilty or that I was guilty beyond a reasonable doubt and to a moral certainty.

15.　I understand that I am giving up my rights to present evidence and to produce witnesses on my behalf, to

file preliminary motions, or to object to evidence and testimony introduced by the State.

16. I understand that I am giving up my right to testify on my own behalf concerning my guilt or innocence or to remain silent during a trial which is a Constitutional right guaranteed me under the law, and whether it were a court or a jury trial if I decided not to testify there could be no inference of guilty by the fact that I didn't testify, because I do have the right to remain silent. If it were a jury trial and I requested it of the judge, the judge would advise the jury that there could be no inference of guilt by reason of the fact that I did not testify, because I do have the absolute right to remain silent.

\* \* \*

18. This is why my rights are being specified in this paper and explained to me by my attorney. I am proceeding in this manner freely and voluntarily without threat or fear to myself or anyone closely related to me.

19. Are you presently on parole or probation? [No]. I understand that if the offense(s) to which I am now proceeding by way of a not guilty, agreed statement of facts occurred while I was on parole or probation, **OR** if the offense(s) occurred after I received a sentence in another case which was going to have some term of probation in the future, my proceeding in this manner today and the court's entering a verdict of guilty could be enough to violate that parole or probation and I could be required to serve the unserved or suspended portion of that sentence.

20. I also understand that by proceeding in this manner today and the court's entering a verdict of guilty to a traffic offense, the Maryland Motor Vehicle Administration can assess points and/or suspend or revoke my driving privileges to the extent permitted by law.

21. If I am not a citizen of the U.S., my proceeding in this manner today and the court's entering a verdict of guilty could be sufficient to cause me to be deported.

Paragraph 17 included the following language:

17. I understand that I am giving up my rights to appeal by proceeding in this manner. Technically, I would still have the right to file an application for leave or permission to appeal, but if the Court of Special Appeals accepted the appeal, it would be limited to the following issues: (1) whether or not this court had jurisdiction to try the case; (2) whether the judge gave me an illegal sentence; (3) whether or not my attorney had given me fair and adequate representation; and (4) whether or not my plea was made voluntarily, whether I knew my rights and were aware of the full consequences of making the plea, and whether I proceeded in this manner of my own free will.

This paragraph appears as excised—crossed out with an "X"—in the record, although without initials of the parties.

After the judge confirmed with Bishop that he understood the form and had no further questions, the following colloquy occurred:

THE COURT: Very well. The maximum penalty, should your plea be accepted, or should you be found guilty after the statement of facts, could be imprisonment of up to twenty-five years on each one of the two charges. At the time of sentencing your attorney will be making a recommendation. You heard the recommendation of the prosecutor. Parole and Probation will be making a recommendation, and there will be sentencing guidelines.

In the event that I exceed any or all of the recommendations or the guidelines, that would not be grounds for you to withdraw your plea and proceed on to trial. Do you understand that?

[BISHOP]: Yes, your Honor.

THE COURT: Besides the plea negotiations of your attorney has anybody made any promises, threats or other inducements to you to get you to do what you're doing here this afternoon?

[BISHOP]: No, your Honor.

THE COURT: Now in a not guilty plea agreed statement of facts I will base my decision on your guilt or innocence on

a statement to be provided to me orally by the prosecutor. Chances are after he provides me with the statement, together with any additions or corrections that your attorney may make, I will find you guilty. In other words, I will base my decision only on the statement provided. Understood?

[DEFENDANT]: Yes, your Honor.

THE COURT: And you are electing to proceed in this fashion, freely, voluntarily, with full understanding of the possible consequences?

[DEFENDANT]: Yes, your Honor.

THE COURT: All right. I'm satisfied that Mr. Bishop understands what he's doing, he is doing it voluntarily, with full understanding of the possible consequences.

The State's Attorney then proffered the "not guilty statement of facts," which included the *Miranda* form,[2] as well as Bishop's written and recorded confessions:

[STATE'S ATTORNEY]: Preliminarily at the time of the motion the state entered three exhibits, the miranda advise [sic] of rights form that the defendant was read and signed, the defendant—secondly, the defendant's written statement; and third, a CD containing an audio recording of the statement that's taken by Detective Streight. I would incorporate by reference those three exhibits into the not guilty statement of facts.

THE COURT: Very well.

---

**2.** This form is a reference to *Miranda v. Arizona,* the seminal case in which the Supreme Court held:

[A]n individual held for interrogation must be clearly informed that he has the right to consult with a lawyer and to have the lawyer with him during interrogation under the system for protecting the privilege we delineate today. As with the warnings of the right to remain silent and that anything stated can be used in evidence against him, this warning is an absolute prerequisite to interrogation. No amount of circumstantial evidence that the person may have been aware of this right will suffice to stand in its stead. Only through such a warning is there ascertainable assurance that the accused was aware of this right.

384 U.S. 436, 471–72, 86 S.Ct. 1602, 1626, 16 L.Ed.2d 694, 722 (1966).

The State's Attorney then recited that to which R.B., one of the alleged victims, would have testified,[3] wherein she would have described instances where Bishop sexually abused R.B. and A.B., the other alleged victim. Thereafter, the State's Attorney described a series of monitored telephone calls between Bishop and R.B., during which Bishop purportedly acknowledged sexually abusing both R.B. and A.B., although neither the recordings nor transcripts of them were admitted into evidence:

> [STATE'S ATTORNEY]: Detective Streight at this point made a series of consensual monitored telephone calls between [R.B.] and [Bishop] during which time he acknowledged having sex with [R.B.] and touching [A.B.].
>
> If I may have just a second. I don't believe the consensually monitored telephone calls were part of the suppression hearing, so I would offer as State's Exhibit, I guess, 4 now, for purposes of the statement of facts, the consensual form for the consensually monitored telephone calls that Mr. Bishop filled out.
>
> Again, during the course of these consensually monitored telephone calls the defendant acknowledged having vaginal intercourse with [R.B.], and having touched [A.B.] in making a sexual contact with her.

Following the description of the telephone conversations, the State's Attorney proffered the testimony of A.B. and described the events that led up to, and the substance of, Bishop's incriminating statements, which were subsequently suppressed by the Court of Special Appeals.

The infusion of the later suppressed confession and the absence of the recording in evidence was further complicated by a comment by Bishop's counsel:

> THE COURT: Any additions or corrections . . . ?

---

**3.** Due to the graphic nature of this testimony and the fact that no party is challenging the sufficiency of the evidence in this case, we will not include this portion of the transcript.

[DEFENSE COUNSEL]: Your Honor, the defense would agree that the young ladies would testify as such. The only corrections is [sic] we would say that the audio tapes or CD's of communications between Mr. Bishop and the young ladies, he did not acknowledge his guilt; but that does not obviously change any of this, your Honor.

No clarification by the State ensued, but the judge proceeded to find Bishop guilty:

THE COURT: All right. Sufficient facts have been presented to justify entry of a guilty verdict to Counts 1 and 3. Presentence investigation is ordered.

Subsequently, Bishop was sentenced to two concurrent sentences of twenty-five years' imprisonment for the two counts of sexual abuse of a minor, with all but twelve years suspended, to be followed by five years of supervised probation. He also was required to register as a sex offender and to have no contact with the victims.

How we characterize what happened in the proceeding, coupled with the agreement, is the gravamen of the parties' dispute. According to Bishop and the State, *Bruno v. State,* 332 Md. 673, 632 A.2d 1192 (1993), is the dispositive case for determining whether harmless error applies when evidence is suppressed on appeal after a proceeding in which a defendant is found guilty based upon the State's proffer of evidence. In *Bruno,* we affirmed a conviction in which the parties proceeded by way of stipulated evidence that included, among other things, three incriminating statements by the Defendant, two of which were later found inadmissible but which we determined to be immaterial in relation to the admissible statement. *Id.* Bishop argues that *Bruno* stands for the proposition that harmless error applies only when the evidence suppressed is not material, and that, in the present case, the suppressed evidence, Bishop's confession, was the "linchpin" of the State's case, thus making *Bruno* inapposite. The State, on the other hand, argues that the admission of the confession was harmless, because Bishop was convicted based on overwhelming evidence of guilt, which included, notwith-

standing the suppressed evidence, the proffered testimony of R.B. and A.B. and a telephone conversation in which Bishop purportedly admitted to sexually abusing R.B. and A.B. Both Bishop and the State concede that the evidence was sufficient to convict Bishop; they differ in the application of harmless error.[4]

The complexity of the conundrum presented in this case, exacerbated by the fact that defense counsel appeared, at the end of the colloquy, to contest a piece of the State's evidentiary foundation without any attempt of clarification by the State, involves an agreement that claimed to be a "NOT GUILTY, AGREED STATEMENT OF FACTS PLEA," wherein a "no appeal" provision has been excised, and an abbreviated trial in which Bishop pled "not guilty" but conceded that the State had "sufficient evidence" to convict. So, before we can even

---

4. In *Bellamy v. State*, 403 Md. 308, 941 A.2d 1107 (2008), we set out the appropriate standard for harmless error analysis:

In *Dorsey v. State* [, 276 Md. 638, 350 A.2d 665 (1976),] we adopted the test for harmless error announced by the Supreme Court in *Chapman v. State* [*of Cal.*, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967).] As adopted in *Dorsey*, the harmless error rule is:

When an appellant, in a criminal case, establishes error, unless a reviewing court, upon its own independent review of the record, is able to declare a belief, beyond a reasonable doubt, that the error in no way influenced the verdict, such error cannot be deemed "harmless" and a reversal is mandated. Such reviewing court must thus be satisfied that there is no reasonable possibility that the evidence complained of-whether erroneously admitted or excluded-may have contributed to the rendition of the guilty verdict.

In performing a harmless error analysis, we are not to find facts or weigh evidence. Instead, "what evidence to believe, what weight to be given it, and what facts flow from that evidence are for the jury ... to determine." " 'Once it has been determined that error was committed, reversal is required unless the error did not influence the verdict; the error is harmless only if it did not play any role in the jury's verdict. The reviewing court must exclude that possibility beyond a reasonable doubt.' " " 'To say that an error did not contribute to the verdict is, rather, to find that error unimportant in relation to everything else the jury considered on the issue in question, as revealed by the record.' " The "harmless error rule ... has been and should be carefully circumscribed." Harmless error review is the standard of review most favorable to the defendant short of an automatic reversal.

*Id.* at 332–33, 941 A.2d at 1121 (internal citations omitted).

entertain whether harmless error applies in this case, our task involves first determining what happened and whether the *Bruno* analysis applies.

When facing criminal charges, an individual has various choices of pleas. An accused can plead not guilty and go to trial before a judge or a jury, or he or she may plead guilty and relieve the State of having to bear its burden of proof. The defendant also could plead *nolo contendere* or take an *Alford* plea, two pleas that are akin to a guilty plea but have different ramifications. In the federal system, under Rule 11 of the Federal Rules of Criminal Procedure, there is also what is called a conditional guilty plea; we have nothing in the Maryland Rules that embodies that procedure,[5] although what has evolved appears to be something akin to a hybrid plea, whereby the accused pleads not guilty, forgoes a full trial and proceeds on an agreed statement of facts or stipulated evidence to preserve appeal on a suppression issue.

Maryland Rule 4–242(a) expressly provides that "[a] defendant may plead not guilty" in a criminal trial, under which an individual retains, *inter alia,* his or her right to confront witnesses, the right against self-incrimination, and the right to a trial by jury. With a plea of not guilty, an accused forces the State to shoulder its burden of proof, *see* F. Bailey & K. Fishman, Criminal Trial Techniques § 31:7 (2009), and retains appellate rights. *See* Maryland Code (1974, 2006 Repl. Vol.), Section 12–301 of the Courts and Judicial Proceedings Article.

---

**5.** Based upon what occurred in this case and our analysis thereof, we would suggest to the Rules Committee that it consider whether to recommend the adoption of a Rule embodying a conditional guilty plea akin to that found in Rule 11(a) of the Federal Rules of Criminal Procedure, which provides, in pertinent part:

**Rule 11. Pleas**

(a) **Entering a Plea.**

(1) *In general.* A defendant may plead not guilty, guilty, or (with the court's consent) nolo contendere.

(2) *Conditional Plea.* With the consent of the court and the government, a defendant may enter a conditional plea of guilty or nolo contendere, reserving in writing the right to have an appellate court review an adverse determination of a specified pretrial motion. A defendant who prevails on appeal may then withdraw the plea.

Conversely, pursuant to Rule 4–242(a), an individual may plead guilty. A guilty plea is an unconditional confession of guilt, under which a judge must adhere to the dictates of Rule 4–242(c), which requires the following colloquy:

(c) **Plea of guilty.** The court may not accept a plea of guilty until after an examination of the defendant on the record in open court conducted by the court, the State's Attorney, the attorney for the defendant, or any combination thereof, the court determines and announces on the record that (1) the defendant is pleading voluntarily, with understanding of the nature of the charge and the consequences of the plea; and (2) there is a factual basis for the plea. In addition, before accepting the plea, the court shall comply with section (e) of this Rule. The court may accept the plea of guilty even though the defendant does not admit guilt. Upon refusal to accept a plea of guilty, the court shall enter a plea of not guilty.

In addition, the judge shall apprise the accused of the collateral consequences of his or her guilty plea, pursuant to Rule 4–242(e), which provides:

(e) **Collateral consequences of a plea of guilty or nolo contendere.** Before the court accepts a plea of guilty or nolo contendere, the court, the State's Attorney, the attorney for the defendant, or any combination thereof shall advise the defendant (1) that by entering the plea, if the defendant is not a United States citizen, the defendant may face additional consequences of deportation, detention, or ineligibility for citizenship, (2) that by entering a plea to the offenses set out in Code, Criminal Procedure Article, § 11–701, the defendant shall have to register with the defendant's supervising authority as defined in Code, Criminal Procedure Article, § 11–701(i), and (3) that the defendant should consult with defense counsel if the defendant is represented and needs additional information concerning the potential consequences of the plea. The omission of advice concerning the collateral consequences of a plea does not itself mandate that the plea be declared invalid.

Appellate review is generally limited to the trial court's adherence to Rule 4–242(c) and (e), which ensure that the accused entered his or her plea voluntarily and knowingly and with an understanding of the consequences of the plea; the convicted forfeits any right to a direct appeal with a guilty plea, Maryland Code (1974, 2006 Repl. Vol.), Section 12–302(e) of the Courts and Judicial Proceedings Article, and "ordinarily waives all nonjurisdictional defects in the proceedings." *Bruno*, 332 Md. at 688–89, 632 A.2d at 1200.

Rule 4–242 also permits the accused, with the consent of the court, to enter a plea of *nolo contendere*. *See* Rule 4–242(d).[6] Literally meaning "I do not wish to contend," *nolo contendere* is a "plea by which the defendant does not contest or admit guilt." Black's Law Dictionary 1147, 1269 (9th ed. 2009). The judge need not confirm the factual basis for the plea but must determine that the defendant entered the plea voluntarily and with an understanding of the nature of the charges, Rule 4–242(d) ("The court may not accept the plea until after an examination of the defendant . . . [in which it] determines and announces on the record that the defendant is pleading voluntarily with understanding of the nature of the charge and the consequences of the plea."), as well as the collateral consequences of such a plea. See Rule 4–242(e). Unlike a guilty plea, a nolo plea subsequently "does not estop the defendant to plead and prove his innocence in a civil

---

6. Rule 4–242(d) provides, in pertinent part:

(d) **Plea of nolo contendere.** A defendant may plead nolo contendere only with the consent of court. The court may require the defendant or counsel to provide information it deems necessary to enable it to determine whether or not it will consent. The court may not accept the plea until after an examination of the defendant on the record in open court conducted by the court, the State's Attorney, the attorney for the defendant, or any combination thereof, the court determines and announces on the record that the defendant is pleading voluntarily with understanding of the nature of the charge and the consequences of the plea. In addition, before accepting the plea, the court shall comply with section (e) of this Rule. Following the acceptance of a plea of nolo contendere, the court shall proceed to disposition as on a plea of guilty, but without finding a verdict of guilty. If the court refuses to accept a plea of nolo contendere, it shall call upon the defendant to plead anew.

action." *Hudson v. United States,* 272 U.S. 451, 455, 47 S.Ct. 127, 129, 71 L.Ed. 347, 349 (1926). Like a guilty plea, once convicted, an accused waives the vast majority of appellate rights, as we noted in *Cohen v. State:*

> As in the case of the plea of guilty, . . . a plea of nolo contendere waives all defenses other than that the indictment charges no offense, and the right to trial and incidental rights. The plea also waives all formal or nonjurisdictional defects or irregularities in the indictment or information or in prior proceedings. . . . Except under extraordinary circumstances, the plea of nolo contendere leaves open for review only the sufficiency of the indictment.

235 Md. 62, 68, 200 A.2d 368, 371 (1964) (citations omitted) (internal quotation marks omitted), *cert. denied,* 379 U.S. 844, 85 S.Ct. 84, 13 L.Ed.2d 49 (1964); *see also id.* at 69, 200 A.2d at 372 ("A plea of *nolo contendere* is an implied confession of guilt, and for the purposes of the case is equivalent to a plea of guilty."), quoting *United States v. Reisfeld,* 188 F.Supp. 631, 632 (D.Md.1960).

 An *Alford* plea, moreover, " 'lies somewhere between a plea of guilty and a plea of *nolo contendere.*' " *Rudman v. Md. State Bd. of Physicians,* 414 Md. 243, 260, 994 A.2d 985, 994–95 (2010), quoting *Mannan v. District of Columbia Bd. of Med.,* 558 A.2d 329, 336 (D.C.1989). Drawing its name from *North Carolina v. Alford,* 400 U.S. 25, 91 S.Ct. 160, 27 L.Ed.2d 162 (1970), such a plea is "a guilty plea containing a protestation of innocence." *Marshall v. State,* 346 Md. 186, 189 n. 2, 695 A.2d 184, 185 n. 2 (1997), citing *Pennington v. State,* 308 Md. 727, 728 n. 1, 521 A.2d 1216, 1216 n. 1 (1987). As the Supreme Court noted in *Alford:*

> [W]hile most pleas of guilty consist of both a waiver of trial and an express admission of guilt, the latter element is not a constitutional requisite to the imposition of criminal penalty. An individual accused of crime may voluntarily, knowingly, and understandingly consent to the imposition of a prison

> sentence even if he is unwilling or unable to admit his participation in the acts constituting the crime.[7]

400 U.S. at 37, 91 S.Ct. at 167, 27 L.Ed.2d at 171. Like a guilty plea and *nolo* plea, the *Alford* plea waives challenges to adverse rulings on pretrial motions and all procedural objections, constitutional or otherwise, limiting appeals to jurisdictional defects and challenges based on the propriety of the trial court's acceptance of the plea. *See Ward v. State*, 83 Md.App. 474, 480, 575 A.2d 771, 773 (1990) (holding "that an *Alford* plea is the functional equivalent of a guilty plea . . . and thus, judgments on *Alford* pleas are not subject to direct appeal").

Amidst the spectrum between not guilty pleas and guilty pleas, there exists the hybrid plea, one in which an individual retains the right to appellate review of evidence subject to a suppression motion but avoids going through the time and expense of a full trial. By pleading not guilty and agreeing to the proffer of stipulated evidence or an agreed statement of facts, an individual, like with a guilty plea, waives a jury trial and the right to confront witnesses but retains appellate review of the suppression decision. Our Court and the Court of Special Appeals have, on several occasions, attempted to discern the difference between a case that proceeds on a not guilty plea on stipulated evidence or on an agreed statement of facts. This distinction apparently was explained initially in *Barnes v. State*, 31 Md.App. 25, 35, 354 A.2d 499, 505–06 (1976), wherein Charles E. Orth, Jr., then–Chief Judge of the Court of Special Appeals, wrote:

> There is a distinction between an *agreed* statement of facts and evidence offered by way of stipulation. Under an

---

7. One commentator notes that

> [a] defendant might choose to enter an *Alford* plea out of the pragmatic reality that the prosecution's evidence is overwhelming, or because his mental state at the time of the offense was so impaired (e.g., through extreme intoxication or drug use) that he cannot truly say that he committed the offense charged.

G. Nicholas Herman, Plea Bargaining 170 (2d ed. 2004) (citations omitted).

agreed statement of facts both [the] State and the defense agree as to the ultimate facts. Then the facts are not in dispute, and there can be, by definition, no factual conflict. The trier of fact is not called upon to determine the facts as the agreement is to the truth of the ultimate facts them- selves. There is no fact-finding function left to perform. To render judgment, the court simply applies the law to the facts agreed upon. *If there is agreement as to the facts, there is no dispute; if there is dispute, there is no agree- ment.* It would be well, to avoid confusion, that when the parties are in agreement on the facts, the statement of them begin with language to the effect, 'It is agreed that the following facts are true . . . .' [8]

On the other hand, when evidence is offered by way of stipulation, there is no agreement as to the facts which the evidence seeks to establish. Such a stipulation only goes to the content of the testimony of a particular witness if he were to appear and testify. The agreement is to what the evidence will be, not to what the facts are. Thus, the evidence adduced by such a stipulation may well be in conflict with other evidence received. For the trier of fact to determine the ultimate facts on such conflicting evidence, there must be some basis on which to judge the credibility of the witness whose testimony is the subject of the stipula- tion, or to ascertain the reliability of that testimony, to the end that the evidence obtained by stipulation may be weighed against other relevant evidence adduced. . . . We note that the usual way of introducing such a stipulation— "If John Doe were to testify, he would testify as follows . . . ."—makes clear the status of the evidence so offered.

In *Barnes,* the importance of the distinction lay in a state- ment made by Barnes's counsel after the State's proffer, in which he offered his own evidence, the purported testimony of

---

**8.** We would note that the highest and best use of a not guilty agreed statement of facts plea is to preserve appellate review of the admissibili- ty of tangible evidence that was litigated at a motion for suppression hearing.

Barnes. *Id.* at 31–32, 354 A.2d at 503. According to the intermediate appellate court, "[t]his evidence received without objection as to what the accused would say if she testified was in direct conflict with the evidence received by way of stipulation as to what the State's witness would say if he testified." *Id.* at 32, 354 A.2d at 503–04. Because this evidence created a dispute of material fact, there could not be, by definition, an agreement to the ultimate facts, and, in addition, stipulated evidence could not be submitted in such a manner, because, absent the ability to determine the credibility of the parties' witnesses, the judge's determination of guilt beyond a reasonable doubt could only be arbitrary. *Id.* at 34, 354 A.2d at 505.

Generally, a determination of whether a proffer is stipulated evidence or an agreed statement of facts is a matter of substance over form. For instance, in *Bruno*, a rape case that proceeded on what the court, prosecutor, and defense counsel referred to as a "not guilty statement of facts," the State's proffer included a narrative in which the State's Attorney described the circumstances surrounding the victim's rape. *Bruno*, 332 Md. at 677–78, 690, 632 A.2d at 1194, 1201. Following the description of the crime, the State proffered three incriminating statements that Bruno made following his arrest. *Id.* at 678, 632 A.2d at 1194–95. We determined that the State's proffer was not an agreed statement of facts, because "it [was] clear that the parties *did not* have an agreement as to *ultimate* fact, but merely an agreement as to what the State's witnesses would attest to if they were called to testify." *Id.* at 690, 632 A.2d at 1201. In *Taylor v. State*, we found that the parties' "agreed statement of facts" actually constituted stipulated evidence, because the parties were merely stipulating as to what the testimony would be at trial. 388 Md. 385, 393–94, 879 A.2d 1074, 1079–80 (2005).

By entering a hybrid plea, the accused maintains the ability to argue legal issues, as well as sufficiency. In *Bruno*, while discussing the trial implications of such a plea, we noted that, although "Bruno's counsel declined the opportunity to present a closing argument, the trial judge did ask for any '[a]rgument as to whether or not the Statement of Facts is sufficient to

constitute the offenses charged,'" and that, in a trial on stipulated evidence, the State still risks acquittal by not presenting sufficient evidence to convict. 332 Md. at 684, 632 A.2d at 1197, 1198. Likewise, in *Taylor*, we explained that the "procedure of having all of the evidence presented through stipulation may be appropriate 'when the parties sought to argue solely legal issues at trial.'" 388 Md. at 398, 879 A.2d at 1082, quoting *Atkinson v. State*, 331 Md. 199, 203 n. 3, 627 A.2d 1019, 1021 n. 3 (1993). *See also Harrison v. State*, 382 Md. 477, 497–98, 855 A.2d 1220, 1232 (2004) ("If a prosecutor proceeds on a not-guilty agreed statement of facts, he or she should take care to assure that the statement contains evidence to support each element of the crime or crimes charged, or else acquittal necessarily will follow."); *Polk v. State*, 183 Md.App. 299, 312, 961 A.2d 603, 610 (2008) (holding that, because the element of concealment was not sufficiently established in the agreed statement of facts, the conviction for carrying a concealed dangerous weapon had to be reversed); *Barnes*, 31 Md.App. at 28, 354 A.2d at 501 (stating that, in a case based on an agreed statement of facts, "an accused must be acquitted if the evidence is not legally sufficient to sustain his conviction").

While the State risks reversal because of insufficient evidence contained in a proffer, an accused must preserve his or her legal challenges by ensuring that the proffer includes the challenged evidence. *Linkey v. State*, 46 Md.App. 312, 416 A.2d 286 (1980), demonstrates this conundrum. In that case, after the trial judge denied Linkey's pretrial motion to suppress incriminating statements and other evidence, the parties proceeded by way of an agreed statement of facts. Based on this agreed statement of facts, the trial judge found Linkey guilty of second-degree murder. *Id.* at 314, 416 A.2d at 288. In his appeal, Linkey argued solely about the denial of his suppression motion. *Id.* In finding that Linkey did not preserve appellate review of the pretrial motion, Judge Alan M. Wilner, then an associate judge on the Court of Special appeals, wrote:

The threshold, and decisive, question before us, however, is whether these issues have been preserved for appellate review.

We think they have not.

The reason for this becomes clear when we look at what transpired at appellant's trial. His conviction rested solely upon an agreed statement of ultimate facts. He stipulated that he had stabbed Howell to death and that he had done so with malice and without premeditation, deliberation, justification, excuse, or mitigating circumstance. All the court was asked to do was to determine whether, as a matter of law, those facts sufficed to constitute second degree murder. In light of this agreement as to ultimate facts, it was, of course, unnecessary to offer, or even refer to, any more particular evidence tending to prove those facts. For that reason, we presume, no mention was made of appellant's statements to the police or of the items obtained from his girlfriend. The "evidence" challenged by appellant was never used as evidence and, from the record before us, was never considered by the court in determining his guilt.

*Id.* at 314–15, 416 A.2d at 288 (internal citations omitted). Judge Wilner was careful to note:

[A]n accused is not necessarily put to the choice of abandoning his challenge to the obtention of critical evidence by entering into an agreement with the State. But to preserve his complaint, he must require the State to utilize the evidence which he has unsuccessfully challenged, and not absolve the prosecutor of that obligation by conceding the ultimate facts sought to be proved by the allegedly improper evidence.

*Id.* at 316, 416 A.2d at 289.

The State's proffer may not contain disputes of material fact, because the judge cannot resolve credibility issues on a mere proffer. In *Taylor*, the defendant was convicted in a case that proceeded on stipulated evidence, wherein the State proffered "a recitation of [the victim's] version of the event and a statement, captioned 'Additional facts,' that contained

some statements of fact, some statements of what [the defendant] had told three of his counselors, and some of what [the defendant] had said in his written statement." 388 Md. at 393, 879 A.2d at 1079. Recognizing that the stipulated evidence contained competing accounts of the incident in question, we reversed, holding:

> [C]riminal cases cannot be resolved on the basis of stipulated evidence that embodies disputes of material fact resolvable only by credibility determinations, when there is nothing in the stipulated evidence that would allow the court, properly, to make such determinations. Should such a procedure be presented, the court must reject it as inappropriate.

*Id.* at 399, 879 A.2d at 1083. *See also Barnes,* 31 Md.App. at 35, 354 A.2d at 505 (stating that, with an agreed statement of facts, because "the facts are not in dispute ... there can be, by definition, no factual conflict").

Although we have made clear that harmless error may be applied both to cases that proceed on an agreed statement of facts and cases in which the parties stipulate to evidence, *see Bruno,* 332 Md. at 691, 632 A.2d at 1201 ("Guiding this decision is our belief that a defendant should not be able to circumvent the application of the harmless error rule because he or she opts to proceed to trial by stipulated evidence or an agreed statement of facts."), the distinction between the two types of hybrid pleas is not rendered meaningless in the context of a harmless error analysis. Rather, the implication of a plea in which a defendant agrees to the ultimate facts of the case is palpable, compared to a plea in which the defendant merely stipulates to the State's evidence, making no admission to the facts that the State's evidence purports to establish. In one, the accused is essentially making a judicial concession as to the ultimate facts of the case, and in the other, the accused is not admitting to anything except that the State would present the enumerated evidence. This distinction is evidenced by Bishop's counsel's concession, at oral argument:

[I]f we had defense counsel say at the conclusion of the statement of facts, "your Honor, we agree that everything those victims said would have been true," I'd think we'd have a problem. I'd think we would have a very big harmless error problem and that is where I think the difference is between a trial of stipulated evidence and a trial of stipulated fact.

It is because of this distinction that, in the present case, the State and Bishop differ regarding the type of plea that Bishop entered and the implications of that plea in light of the Court of Special Appeals' suppression of his confession.

Despite the parties' attempts to characterize this case as one of the two types of hybrid pleas, the context presented by the parties does not inform our determination of this "boggart" [9] of a plea and the implications of the suppressed confession, because, confronting the totality of the plea agreement and the proceeding, we see an amalgamation of the array of pleas that a defendant could enter in a criminal proceeding. At first, it appears as though Bishop entered a not guilty plea on an agreed statement of facts, mainly due to the initial dialogue between the parties and the trial judge and the agreement into which the parties entered. The State asserts that this is, indeed, the type of plea that Bishop entered, emphasizing that Bishop understood the nature of this plea, because he signed the form entitled "NOT GUILTY, AGREED STATEMENT OF FACTS PLEA," which described the nature of an agreed statement of facts, and that Bishop confirmed that he understood the form and its contents.

The State's proffer, however, as Bishop argues (and we agree), was more illustrative of what the testimony and evidence was going to be had the case gone to a full trial rather

---

**9.** A "boggart" is a shape-shifting creature from the Harry Potter series of books that takes the form of the viewer's worst fears. Because it instantly changes shape when someone first sees it, no one knows what a boggart looks like when it is alone. One way to combat a boggart is with the charm *riddikulus*. J.K. Rowling, Harry Potter and the Prisoner of Azkaban (New York: Scholastic 1999).

than an agreement as to the ultimate facts, as exemplified by Bishop's counsel's statement that the "defense would agree that the young ladies would testify as such," and the State's characterization of R.B.'s statement as how she "would have testified had this gone to trial." *See Barnes,* 31 Md.App. at 35, 354 A.2d at 506 ("We note that the usual way of introducing . . . stipulat[ed] [evidence]—'If John Doe were to testify, he would testify as follows . . . .'—makes clear the status of the evidence so offered."). As in *Taylor,* 388 Md. at 393, 879 A.2d at 1079, and *Bruno,* 332 Md. at 690, 632 A.2d at 1201, despite the label affixed to this plea, it is clear that the parties had no agreement as to the ultimate facts of the case and, at best, were stipulating to the evidence that the State would have presented at trial.

The agreement entitled "NOT GUILTY, AGREED STATEMENT OF FACTS PLEA" further complicates our analysis of Bishop's plea, as it appears to be more like a *nolo contendere* or *Alford* plea, from which appeal rights do not normally exist to preserve suppression issues:

- The caption of the form included the following: "FUNCTIONAL EQUIVALENT TO A GUILTY PLEA—*NO DIRECT APPEAL RIGHTS* "[10] (emphasis added).

- The introduction paragraph stated that Bishop was proceeding "by way of a not guilty plea on an agreed statement of facts to one or more offenses *to which you will no doubt be found guilty* . . . ." (emphasis added).

- Paragraph 8 contained the following: "I am technically pleading not guilty"; "*Instead of my having a judge trial* or a jury trial . . . the state or defense will present our agreed upon statement of facts to the court. That agreed upon statement of facts *will be sufficient for the judge to find me guilty* of the offense(s) . . . ."; and "By proceeding in this manner I am still pleading not guilty and denying guilt. *I*

---

**10.** Paragraph 17, excised by the parties, articulated the basis for no appeal rights.

*am not admitting to any of the conduct necessary to establish guilt."* (emphasis added).

- Paragraph 9 contained the following: "In this case *the agreed statement of facts will be sufficient for the court to find me guilty of each offense* " (emphasis added).

- Paragraph 12 contained the following: "I understand that by proceeding in this manner *I am giving up my absolute right to plead not guilty and have a trial. If I pled not guilty and had a trial, the State would have to prove each and every count against me by proof beyond a reasonable doubt and to a moral certainty."* (emphasis added).

- Paragraph 14 contained the following: "I understand that by proceeding in this manner *I am giving up my right to be tried by a judge or a jury.* A trial by a judge would be a trial by a judge of the circuit court. *I could not be found guilty in a judge trial unless the judge decided beyond a reasonable doubt and to a moral certainty that I was guilty."* (emphasis added).

Our exploration of the proceedings below does not end here, however, as our analysis is further muddied by the State's proffer regarding the telephone conversations between Bishop and R.B. In its presentation of evidence, the State failed to introduce a recording of the telephone conversations, or the transcripts thereof, that purported to contain Bishop's acknowledgment of sexually abusing R.B. and A.B., choosing to, instead, offer a characterization of those conversations. When Bishop's counsel offered a competing explanation of that recording, the State did nothing to resolve the dispute, seemingly not concerned about appellate review.[11] Bishop argues that this exchange amounted to two competing proffers, adding:

At no point during the trial does the judge recess to review the tapes, there is nothing in the record to suggest that the tapes were transcribed at the time of the trial, and there is

---

11. Because the State did not present a Conditional Cross–Petition for Writ of Certiorari in which the suppression of Bishop's confession was challenged, we will not address the merits of that ruling.

nothing in the record to suggest that the trial court reviewed the tapes prior to trial. As such, the dispute as to what significance, if any, those tapes had in establishing [Bishop's] guilt was never resolved by the trial court.

According to the State, however, Bishop's counsel's assertion that he did not acknowledge guilt in the telephone conversations does not create a dispute of material fact. Rather, the State argues, Bishop's counsel's contention "clearly related to the court's role in applying the law to the agreed facts in determining Bishop's guilt" and did not constitute a challenge to the substance of those communications. The State distinguishes *Taylor* and contends that, in Bishop's case, "the material evidence [was] not in conflict and there [were] no significant witness credibility issues," as there were in *Taylor*.

We are unpersuaded by the State's attempt to distinguish *Taylor*. Because the contents of the telephone conversation were never entered into evidence, it is impossible to classify Bishop's counsel's statement as creating anything other than a dispute. Absent anything to resolve credibility determinations, as was the case here, a disputed issue in a hybrid plea invokes the dictates of *Taylor*, in which we declared:

> In light of our holding as to the Agreed Statement, the verdicts rendered below cannot stand. The deficiency is not one of legally insufficient evidence, however, but rather one of trial error—the procedure used to determine guilt. The case must therefore be remanded for new trial.

388 Md. at 399–400, 879 A.2d at 1083. The issue becomes, then, one of trial error rather than harmless error. Accordingly, we cannot even entertain whether the admission of Bishop's confession was harmless, when Bishop's guilt was determined based on, among other things, two competing proffers of evidence, as the judge had no means to resolve that dispute. *See id.* at 399, 879 A.2d at 1083; *Barnes,* 31 Md.App. at 34, 354 A.2d at 505.

In this case, Bishop's counsel's remarks created a dispute over the content of the telephone conversations, one which the State left unresolved, making Bishop's hybrid plea,

under *Taylor,* the incorrect vehicle for the Circuit Court judge to determine Bishop's guilt. Add to this the convoluted nature of the plea, wherein a hybrid plea was entered within the framework of a *nolo* or *Alford* plea, and we are unable to even attempt a harmless error analysis.[12] As a result, because

---

12. In its proffer, the State made brief mention of the recorded telephone conversations between Bishop and R.B. After Bishop's trial counsel stated that Bishop did not acknowledge guilt in those conversations, the State's Attorney did *absolutely nothing.* For some reason that is lost on this Court, the State's Attorney did not do what he should have done: either play the conversations in their entirety for the judge or simply stop the proceeding and clarify, for the record, whether the defendant was simply reaffirming his not guilty plea, as the State argues, or challenging the validity of the prosecutor's characterization of the recorded conversations, as Bishop argues. Either way, we are left wondering what was said during those telephone conversations, because, as the State conceded during oral argument, no court could have listened to those recordings, as they were never admitted into evidence.

This is not the first time we and our colleagues on the Court of Special Appeals have admonished prosecutors for not doing their due diligence in cases that proceed on stipulated facts or evidence. In *Harrison v. State,* 382 Md. 477, 855 A.2d 1220 (2004), a case that turned on a determination of whether a victim inhabited a "kill zone" created by the defendant, which would have facilitated a finding of concurrent intent on the part of the defendant and thus supported his conviction of second-degree murder, the State and the defendant proceeded on an agreed statement of facts. In finding that the agreed statement of facts was insufficient to establish that the victim inhabited the "kill zone" created by the defendant, this Court admonished prosecutors for proceeding with an agreed statement of facts that was legally insufficient:

This Court and the Court of Special Appeals have heretofore made clear that prosecutors risk acquittal when a not-guilty agreed statement of facts fails to support the legal theory upon which the State relies. We renew that admonition today. If a prosecutor proceeds on a not-guilty agreed statement of facts, he or she should take care to assure that the statement contains evidence to support each element of the crime or crimes charged, or else acquittal necessarily will follow.

*Id.* at 497–98, 855 A.2d at 1232 (internal citations omitted). Recently, Judge Charles E. Moylan, Jr., writing for the Court of Special Appeals, echoed our sentiments in *Harrison* and commented on the circumstances that lead to such haphazard proffers:

Ironically, what frequently appears to be an almost total "cave in" on the part of a defendant may sometimes, as in this case, turn out to be a risky gamble for the prosecutor to take. The danger is that the mood and tenor of the proceedings give every appearance that the defendant is content to accept the lesser penalty agreed upon and is

of the *Taylor* conflict regarding the recorded telephone conversations and the muddled record, we shall vacate the judgment of the Court of Special Appeals and remand the case back to the Circuit Court for Cecil County with instructions to allow Bishop to withdraw his plea.

**JUDGMENT OF THE COURT OF SPECIAL APPEALS VACATED. CASE REMANDED TO THE COURT OF SPECIAL APPEALS WITH DIRECTIONS TO REMAND TO THE CIRCUIT COURT FOR CECIL COUNTY FOR FURTHER PROCEEDINGS NOT INCONSISTENT WITH THIS OPINION. COSTS IN THIS COURT AND IN THE COURT OF SPECIAL APPEALS TO BE PAID BY RESPONDENT.**

uninclined to protest in any way about anything. That easy-going geniality may insidiously lull the prosecution into letting down its guard and becoming less than vigilant in its composition of the statement of facts. Preparing such a statement can be a tricky exercise and should never be approached casually.
*Polk v. State*, 183 Md.App. 299, 301–02, 961 A.2d 603, 604 (2008). What these reprimands demonstrate is that, notwithstanding a defendant's willingness to absolve the State of putting on a case, the onus is still on the State to protect the record for appellate review, especially, as is the case here, in cases where the defendant is proceeding in such a manner *specifically* to preserve appellate review of a pretrial ruling.